UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

DIANA COREA, SINDY PINEDA, ISAAC RUNCIMAN, AMPARO CHAUCA, LAOS CARDOSO, AND JUANA CRUZ, Individually, and on behalf of all others similarly situated as Class Representatives,

Plaintiff,

v.

CAFÉ SPICE {GCT}, INC. A/K/A CAFÉ SPICE INC. A/K/A CAFÉ SPICE GLOBAL CUISINE A/K/A ZAIKA FLAVORS OF INDIA; SUSHIL MALHOTRA; SAMEER MALHOTRA; PAYAL MALHOTRA; AND VIRGILIO FELIX,

Defendants.

---------------------------------------------------------------------X

Case No.: 7:18-cv-10354 (KMK) (JCM)

**DECLARATION OF ROBERT MCCREANOR IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT, PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PROPOSED NOTICE OF SETTLEMENT**

I, ROBERT MCCREANOR, declare under penalty of perjury that the following is true:

1. I am lead counsel to the Plaintiffs in this case and have handled it from its inception. I make this declaration in support of Plaintiffs' Motion for Preliminary Approval of the Settlement, Provisional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Proposed Notice Of Settlement.

**THE SETTLEMENT AGREEMENT**

2. This case involves an array of Fair Labor Standards Act and the New York Labor Law claims of approximately 700 current and former employees of Defendants who performed manual labor at Defendants' New Windsor, NY food plant.

3. On November 25, 2019, the parties executed the Settlement Agreement attached here as Exhibit 1.

4. The Settlement Agreement creates a fund of $1,600,000 to settle this action and resolve the claims of the Named Plaintiffs, Individual Salary Paid Plaintiffs and all Opt-In Plaintiffs, as well as the claims of all Class Members who do not "opt out" of the settlement.

5. The list of FLSA Opt-In Plaintiffs and all Rule 23 Class Members, as agreed upon by the parties, are attached to the Settlement Agreement as Exhibits A and B.

6. Under the Settlement Agreement, Class Members will be notified that Class Counsel is permitted to seek an award of fees of up to $125,000 which equals roughly 8% of the Settlement Amount, plus actual costs incurred in the litigation. The Settlement Agreement is not contingent on the amount of attorneys' fees and costs ultimately awarded by the Court and any fees not awarded revert to the class.

7. The Settlement Agreement also provides that the four (4) Class Representatives will apply for service awards of up to $10,000 and the eleven (11) FLSA opt-in Plaintiffs who participated in individualized discovery will apply for service awards of up to $2,000. These service awards are appropriate because they provided the facts and information necessary to bring this action and obtain conditional certification, attended dozens of meetings with Plaintiffs' Counsel

        over the course of more than one year, undertook special risks, and conferred an excellent benefit by undertaking this litigation, not just for themselves, but also on behalf of the class.  The result obtained here would not have been possible without the considerable time and effort of the Class Representatives and the initial FLSA opt-in Plaintiffs and the risks they ran.

8. The Settlement Agreement provides that copies of the Class Notice and Claim form, including copies translated into Spanish and Hatian Creole—the two foreign languages most commonly spoken by Class Members, will be distributed to all Rule 23 Class Members.

9. The Settlement Agreement requires that all Rule 23 Class Members, except those who have filed a FLSA Consent to Sue form in this action, must submit to the Claims Administrator a completed Claim Form in order to become a Qualified Class Member and receive payment of settlement funds.  Plaintiffs' Counsel recommends this provision because (a) it significantly reduces the costs of claims administration which will be deducted from the Settlement Fund, (b) it reduces the risk of fraud arising from incorrect contact information and (c) provides Rule 23 Class Members the opportunity to verify their correct mailing address and other personal information.  In the experience of Class Counsel, these considerations are particularly important in cases involving low-wage, immigrant workers whose contact information is more likely to change during the course of their employment and litigation.

10. The Settlement Agreement provides that all Rule 23 Class Members shall be permitted to submit a Claim Form (and thereby become a Qualified Class Member) at any time within three years from the date of the Fairness Hearing.

11. The Settlement Agreement provides for a minimum payment of $100 to all Rule 23 Class Members. This will assure that individual Class Members who worked only a short time will receive an amount sufficient to justify a release of their FLSA and NYLL claims.

12. The Settlement Agreement provides that, upon Defendants' third and final installment payment, any unclaimed funds will be redistributed to Qualified Class Members according to the formula set forth in the Agreement. Under this reallocation provision, individual Class Members who received a minimum payment of $100 as their previously Individual Settlement Amount will receive a share of the unclaimed funds proportional to their actual number of days or weeks worked.

**FAIRNESS OF THE SETTLEMENT PROCESS AND RESULT**

13. Prior to commencement of this action, Plaintiffs' Counsel undertook substantial investigation of the claims through interviews with the six Named Plaintiffs and additional former employees of Defendants, as well as review of time and pay records and other evidence both in the workers' possession and obtained from third parties.

14. From the date of filing of the Complaint to the date of mediation, Plaintiffs' Counsel communicated directly with scores of additional current and former employees of Defendants regarding the claims in this action. Through Plaintiffs'

        Counsel, 58 current and former employees of Defendants filed Consent to Sue forms in this action prior to the mediation. Many of these workers provided Plaintiffs' Counsel with information relevant to evaluation of the claims and defenses in this case.

15. Plaintiffs' Counsel vigorously sought to obtain, both from Defendants and third parties, the information necessary to prove and evaluate the strength of Plaintiffs' claims.

16. Shortly after commencement of the action, Plaintiffs' Counsel served Defendants with discovery requests. On three occasions, Plaintiffs' Counsel sought judicial intervention to compel Defendants to fulfill their discovery obligations. (Dkts. 49, 78 and 102) Consequently, Plaintiffs received from Defendants time and pay records for substantially all of the proposed Rule 23 Class Members, as well limited amounts of information in other relevant categories such as personnel files and internal communications.

17. Plaintiffs' Counsel issued a subpoena to Defendants' payroll processor, ADP, and, in response, received additional information, including metadata, pertaining to time and pay records for the proposed Rule 23 Class for a significant portion of the relevant statutory period.

18. Plaintiffs' Counsel submitted Freedom Of Information Act (FOIA) requests to the United States Department of Agriculture (USDA) and, in response, received information pertaining to regular inspection of Defendants' food plant and related delays and interruptions in production.

19. Plaintiffs' Counsel personally interviewed and collected evidence from scores of Defendants' current and former employees, including former managerial staff, in and around New Windsor, NY.

20. From inception of the case, and at multiple Court appearances, Plaintiffs' Counsel publicly suggested to Defendants' original counsel, the law firm of Segal McCambridge Singer & Mahoney, Ltd., that the parties should pursue a negotiated settlement of the case. Defendants' original attorneys rebuffed these suggestions.

21. On or about August 7, 2019, I was informed by Defendants' then attorneys that their representation of Defendants had been terminated and that Defendants had retained Jackson Lewis, P.C.

22. On August 14, 2019, Jackson Lewis, P.C. was formally substituted as Defendants' Counsel in this action. Shortly thereafter, Defendants agreed to produce much of the documentary evidence which was the subject of Plaintiffs' then pending motion to compel and the parties mutually determined to pursue a negotiated settlement through private mediation.

23. Plaintiffs' Counsel computed damages and provided to Defendants a settlement demand on September 18, 2019.

24. On September 23, 2019, the parties and their counsel participated in a mediation session conducted by Marc Isserles, Esq. at JAMS, beginning at 10:00 a.m. and concluding at approximately 1:00 a.m. on the following day. All of the Named Plaintiffs were present for the entirety of the mediation session. Ultimately, the parties reached an agreement in principle.

25. Settlement discussions continued after the settlement conference and the parties began the process of drafting and negotiating over the formal terms of a settlement agreement.

26. Worker Justice Center of New York (WJCNY) and the attorneys handling this case are experienced in representing low-wage and immigrant workers in wage and hour litigation. Plaintiffs' Counsel have thoroughly reviewed the relevant hours and pay data for each individual class member, have made an assessment of the litigation risks to determine the rational settlement value of this case, and the parties have, through the adversarial system, drafted an agreement that meets all procedural requirements for presentation to the class.

27. Here, the parties have already undertaken considerable time and expense in evaluating the claims and defenses in this case and engaging in vigorous settlement discussions. Further litigation without settlement would necessarily result in additional expense and delay.

28. Although Notice of the Settlement has not been issued to the Class, Class Counsel is confident that the reaction of the Class will be positive.

29. The Class Representatives attended the mediation and were happy with the Settlement once they understood the risks of proceeding with the litigation and together with Class Counsel, they believe this Settlement is best for the Class as a whole. Class Counsel has received similar feedback from Class Members with whom they have communicated since the mediation.

30. Plaintiffs' Counsel had all the information they needed to fully value the case, for each individual class member as well as for the class as a whole. Plaintiffs'

      Counsel thus knew what data was needed to value the claims and knew how to do that valuation. Plaintiffs' Counsel, through diligent investigation, also well knew what risks the case presented. Plaintiffs' Counsel believe the settlement represents a fair and reasonable sum given these risks.

31. Before the settlement conference, Plaintiffs' Counsel analyzed the data and had numerous detailed conversations with Defendants' Counsel about the class-wide data provided.

32. Plaintiffs' Counsel developed damage models and exchanged damage calculations with Defendants' Counsel prior to the settlement conference.

33. Based upon evidence gathered through investigation and discovery, Plaintiffs' Counsel made revisions to the Class definition and, where appropriate, structured the settlement agreement to account for variations in the employment experiences of Plaintiffs and Class Members.

34. Plaintiffs' Counsel learned that 14 Class Members who had been employed by Defendants as truck drivers during the relevant statutory period, were incorrectly paid on a salary basis for approximately 8 months. These individuals where paid on an hourly basis for the duration of their employment outside of the 8 month "salary paid" period. Through review of documentary evidence and direct communication with several of these individuals who had opted-in to the case, Plaintiffs' Counsel determined that they had experienced the same array of wage and hour violations as alleged by the Class Representatives and are appropriately included in the Class. The Settlement Agreement includes an allocation formula

that will compensate these individuals for their unpaid overtime premium during the weeks in which they were paid on a salary basis.

35. [intentionally blank]

36. After the settlement conference, the parties dedicated two months to negotiate the terms of the settlement. The parties had enough information to adequately appreciate the merits of the case before negotiating this settlement.

37. While Plaintiffs believe that their claims are meritorious and class-wide damages provable, Class Counsel are experienced and realistic, and understand that the resolution of these issues is inherently uncertain in terms of outcome and duration.

## ADEQUACY OF COUNSEL'S REPRESENTATION

38. WJCNY, a statewide non-profit legal assistance organization with offices in Westchester, Ulster and Monroe counties, and its predecessor organizations (Farmworker Legal Services of New York and Workers Rights Law Center of New York) have represented low-wage workers throughout New York State in significant employment litigation matters, including many collective and class action cases, for several decades.

39. WJCNY does not charge its clients for legal assistance but does depend on awards of costs and fees under FLSA, NYLL and other fee shifting statutes to maintain its operations and continue to provide legal assistance to other vulnerable, low-income New Yorkers.

40. This case was handled without prepayment of costs and fees by the Plaintiffs. WJCNY has advanced all the costs of this litigation to date and has covered the overhead for office expenses and payroll of staff handling the litigation.

41. Current cases being handled by WJCNY are summarized on our website http://wjcny.org.

42. WJCNY is currently handling litigation around New York State in which we represent low-wage workers in labor and employment matters across a range of industries, including multiple certified and putative collective and class actions in the Southern and Western Districts of New York. For a summary list of major cases currently under litigation by the WJCNY, see the WJCNY's website.

43. There are currently five full-time practicing attorneys employed at WJCNY, four of whom are primarily focused on labor and employment matters affecting low-wage and immigrant workers and one of whom is focused on immigration law matters. WJCNY has a robust and diverse community outreach staff who are largely bilingual in English and Spanish and culturally competent in the provision of services to our clients.

44. I am a 2002 graduate of the Harvard Law School and have been actively practicing law for nearly 17 years. I served by appointment of Robert Morgenthau as an Assistant District Attorney for three years in a trial bureau of the New York County District Attorney's office during which time I prosecuted hundreds of misdemeanor and felony cases including more than 15 of which were tried to verdict before juries and in which I served as lead or sole trial counsel, and others which concluded through bench trials. I was subsequently employed for approximately two years as

        a litigation associate at the law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP where I primarily represented individual and corporate clients in commercial litigation matters including a major privately initiated federal anti-trust action in which I served as the senior associate on the matter.

45. For more than a decade, I have worked in various non-profit, public interest legal practice settings. I was the founding staff attorney for the employment and housing litigation programs at Catholic Migration Services (CMS), a leading provider of non-profit civil legal services to immigrants and refugees in Brooklyn and Queens, NY. In this capacity, I frequently represented large groups of low-income individuals in both housing and employment law matters. For example, I served as lead counsel for Plaintiffs in *Aguaiza et al. v. Vantage Properties LLC et al.* (105197/08), a case brought in New York State Supreme Court by dozens of low-income, immigrant tenants against their corporate landlords. Similarly, I served as co-counsel for Plaintiffs in *Chamorro et al. v. Ghermezian et al* (SDNY 12-cv-8159), a Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) case in the Southern District of New York which was conditionally certified as a collective action. I subsequently served as Director of Legal Services for CMS during which time I continued to litigate a high volume of housing and employment cases, as well as handle immigration legal matters, while supervising a legal staff comprised of approximately 25 attorneys, paralegals and administrative support persons.

46. I then served as Executive Director and supervising attorney for the Rhode Island Center for Justice, a non-profit public interest law office based in Providence, RI.

      During this time, I continued to represent large groups of low-income individuals in a range of employment law and civil rights related legal practice areas. For example, I served as lead counsel for Plaintiffs in *Bennett et al. v. Ahern et al.* (PC-15-4214), a class action brought in Rhode Island Superior Court by several low-income, medically vulnerable utility consumers against National Grid and the State of Rhode Island on behalf of more than 5,000 similarly situated households who had experienced illegal shut-off of their gas and electric utility service. In this case, I successfully argued for Plaintiffs at a preliminary injunction hearing, obtaining provisional class-wide injunctive relief. I also served as lead counsel for Plaintiffs in *Reyes et al. v. East Coast Lot & Pavement Corp. et al. (*1:16-cv-00592), a FLSA case brought in the District of Rhode Island and certified as a 216 (b) collective action. I also represented a group of low-wage workers as lead counsel in *Guarcas et al. v. Gourmet Heaven et al.*, a case brought in the District of Rhode Island in which plaintiffs' prevailed on *inter alia* the issue of successor liability under the FLSA, the first such decision in the First Circuit. *Guarcas v. Gourmet Heaven*, LLC, 2016 US Dist LEXIS 180714 (DRI Nov. 30, 2016, No. 15-056ML)

47. I recently served as Executive Director and supervising attorney of the Hudson Valley Justice Center, a non-profit legal services organization, where my colleague attorney Maureen Hussain, Esq. and I developed an employment litigation docket focused on representation of low-wage workers in wage and hour, illegal discrimination, labor trafficking and other related matters. *See Sandoval v. Tequila Sunrise of Westchester Inc. et al.* (SDNY 7:17-cv-01504) (FLSA and NYLL claims on behalf of restaurant worker); *Alberto et al. v. Plaza Sweets et al*. (SDNY 7:17-

...

cv-10048-NSR) (FLSA, NYLL and ERISA claims on behalf of large-scale commercial bakery workers); *Barragan Contreras et al. v. Rosann Landscape Corp. et al.* (SDNY 7:17-cv-06453-CS) (conditionally certified FLSA collective action, Rule 23 certified NYLL class action on behalf of landscaping workers); *Ramirez et al. v. Abayev et al.* (SDNY 1:17-cv-08688) (FLSA and NYLL claims on behalf of construction workers); *Bisono et al. v. TDL Restoration, Inc. et al.* (SDNY 7:17-cv-9431-JCM) (FLSA and NYLL claims tried to jury verdict in which plaintiffs were awarded maximum damages).

48. As of June 1, 2018, I have served as Legal Director of Worker Justice Center of New York (WJCNY). In this capacity, I have continued to represent low-wage workers in labor and employment matters including the following cases: *Cardenas et. al. v. A.J. Piedimonte Agricultural Development, LLC. et. al.,* (WDNY 1:18-cv-881)(conditionally certified FLSA collective action on behalf of farmworkers); *Diaz Reyes et al. v. W.D. Henry & Sons et al.* (WDNY 1:18-cv-01017) (FLSA, NYLL and Agricultural Worker Protection Act (AWPA) claims on behalf of migrant and seasonal farmworkers); *Morales et al. v. Three Diamond Diner Corp. et al.* (7:19-cv-03460) (FLSA, NYLL and employment discrimination claims brought on behalf of large group of restaurant workers).

Dated: November 25, 2019

Kingston, New York

*/s/ Robert McCreanor*
Worker Justice Center of New York

9 Main Street
Kingston, NY 12401
Tel: (845) 331-6615