UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

DIANA COREA, SINDY PINEDA, ISAAC
RUNCIMAN, AMPARO CHAUCA, LAOS
CARDOSO, AND JUANA CRUZ,
Individually, and on behalf of all others
similarly situated as Class Representatives,

Plaintiff,

v.

CAFÉ SPICE {GCT}, INC. A/K/A CAFÉ
SPICE INC. A/K/A CAFÉ SPICE GLOBAL
CUISINE A/K/A ZAIKA FLAVORS OF
INDIA; SUSHIL MALHOTRA; SAMEER
MALHOTRA; PAYAL MALHOTRA; AND
VIRGILIO FELIX,

Defendants.

Case No.: 7:18-cv-10354 (KMK)
(JCM)

_____

MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT,
PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT
OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PROPOSED
NOTICE OF SETTLEMENT

Respectfully Submitted,

*by*

Robert McCreanor
Laura Revercomb
John Marsella
Worker Justice Center of New York
9 Main Street
Kingston, NY 12401
(845) 331-6615

*Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

    I.    Procedural History.......................................................................................... 2

    II.   Overview of Investigation and Discovery.................................................... 3

    III.  Settlement Negotiations. ................................................................................ 4

SUMMARY OF SETTLEMENT TERMS.................................................................. 5

    I.    Scope of the Settlement.................................................................................. 5

    II.   The Settlement Fund. ...................................................................................... 5

    III.  Affected and Qualified Class Members. ...................................................... 6

    IV.  Allocation Formula. ....................................................................................... 7

    V.   Releases............................................................................................................ 9

    VI.  Attorneys' Fees and Litigation Costs......................................................... 10

    VII. Service Awards ............................................................................................. 10

    VIII. Claims Administrator. ................................................................................. 12

THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED CLASS

    SETTLEMENT ...................................................................................................... 12

    I.    THE PRELIMINARY APPROVAL STANDARD ..................................... 12

    II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE......................... 14

    A.   *Grinnell* Factor 1: Complexity, Expense, and Likely Duration of Litigation ............... 15

    B.   *Grinnell* Factor 2: Reaction of the Class........................................................... 16

    C.   *Grinnell* Factor 3: Stage of the Proceedings ................................................... 16

    D.   *Grinnell* Factors 4 and 5: Risks of Establishing Liability and Damages ....................... 17

    E.   *Grinnell* Factor 6: Risks of Maintaining the Class Action Through the Trial ............... 18

    F.   *Grinnell* Factor 7: Ability of Defendant to Withstand a Greater Judgment................... 18

G.   *Grinnell* Factors 8 and 9: Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and In Light of All the Attendant Risks of Litigation ........................................................................................... 19

THE SETTLEMENT CLASS SHOULD BE CERTIFIED ....................................................... 20

I.   THE CLASS CERTIFICATION STANDARD ............................................................ 20

A.   Numerosity ........................................................................................ 21

B.   Commonality ..................................................................................... 21

C.   Typicality ........................................................................................... 22

D.   Adequacy of Representation ............................................................. 23

E.   Rule 23(b)(3) ..................................................................................... 24

F.   Class Counsel .................................................................................... 28

II.   THE PROPOSED FORMS AND METHOD OF NOTICE TO CLASS MEMBERS ARE FAIR AND ACCURATE. ............................................................ 29

A.   The Proposed Class Notice Satisfies Due Process .............................. 29

B.   The Notice Plan and Award Distribution Process Are Appropriate ..................... 29

THE SETTLEMENT OF INDIVIDUAL SALARY PAID PLAINTIFFS' CLAIMS SATISFIES *CHEEKS* REQUIREMENTS…………………………………………………31

CONCLUSION ........................................................................................................ 33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .............................................. 20, 25, 26, 27

*Amhaz v. Booking.com (USA) Inc.*, 2019 U.S. Dist. LEXIS 188519  (S.D.N.Y.
    Oct. 29, 2019) ........................................................................................................... 31

*Beckman v. KeyBank, N.A.,* 293 F.R.D. 467 (S.D.N.Y. 2013) ................................ 17, 18

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)......................................................... 10

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002)................................ 22

*Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386 (9th Cir. 1992)..................................... 25

*Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir 2015).................................. 31, 32

*Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y.
    Oct. 16, 2019) ........................................................................................................... 19

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)........................... 15, 16, 17, 18, 19

*Cancilla v. Ecolab Inc.,* 2015 U.S. Dist. Lexis 106249 (N. D. Cal. August12,
    2015) ........................................................................................................................... 7

*Clark v. Ecolab Inc.,* Nos. 07 Civ 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL
    1948198 (S.D.N.Y. May 11, 2010)............................................................................. 14

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir.
    2007) .......................................................................................................................... 25

*Corte v. Fig & Olive Founders LLC*, No. 14-cv-7186(KPF), 2015 WL 12591677
    (S.D.N.Y. June 24, 2015)............................................................................................ 14

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................... 15

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)................................ 21

*Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 WL
    5841128 (S.D.N.Y. July 27, 2009) ............................................................................. 21

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006) ........................................ 24

*Dorn v. Eddington Sec., Inc.,* 08 CIV. 10271 LTS, 2011 WL 382200 (S.D.N.Y.
    Jan. 21, 2011)....................................................................... 21, 23, 24, 25, 29

iii

*Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) ................................................................................................... 11

*Flores v. Anjost Corp.*, 284 F.R.D. 112  (S.D.N.Y. 2012) ............................................. 24

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ................................ 13

*Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281 F.R.D. 100, 104-05 (E.D.N.Y. 2011) ........................................................................................... 21

*Garcia Morales v. New Indian Foods LLC*, 18-CV-3401, 2019 WL 2544867 (S.D.N.Y. June 20, 2019) ......................................................................... 21, 27

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ...................................................... 26

*Henry v. Little Mint, Inc.*, No. 12-cv-3996(CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ........................................................................................... 13

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................................................. 15, 17, 18, 19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .............................................................. 14

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995) ................................................................................................ 20

*In re Michael Milken and Associates Securities Litig.,* 150 F.R.D. 57 (S.D.N.Y. 1993) ....................................................................................................... 29

*In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ........................ 19

*In re Top Tankers, Inc. Sec. Litig.*, 06 CIV. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ........................................................................... 14

*In re Traffic Executive Ass'n*, 627 F.2d 631 (2d Cir. 1980) ........................................ 13

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ........................... 17

*Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ....................................................................................................... 14

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ................................................... 21

*Martens v. Smith Barney Inc.,* 181 F.R.D. 243 (S.D.N.Y. 1998) ................................ 24

*Martinez v. Gulluoglu LLC*, 2016 U.S. Dist. LEXIS 5366 (S.D.N.Y. Jan. 15, 2016) .......................................................................................................... 32

*Massiah v. MetroPlus Health Plan, Inc.*, No. 11–cv–05669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ........................................................ 15

*Matheson v T-Bone Rest. LLC.*, 2011 US Dist LEXIS 143773 (S.D.N.Y. Dec. 13, 2011) ................................................................................................... 11

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1998) ............... 12

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005) ..................................... 25

*McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304 (D. Mass. 2004) ...................... 27

*Mentor v. Imperial Parking Sys., Inc.*, 2010 U.S. Dist. LEXIS 132831, 2010 WL 5129068, (S.D.N.Y. Dec. 15, 2010) .......................................................... 11

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 06 CIV.4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .......................................... 14

*Moreira v. Sherwood Landscaping Inc.*, 2015 U.S. Dist. LEXIS 43919 (E.D.N.Y. Mar. 31, 2015) ........................................................................................ 26

*Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611 (S.D.N.Y. 2012) .......... 14, 22

*Morris v. Alle Processing Corp.*, 2013 U.S. Dist. LEXIS 64534 (E.D.N.Y. May 6, 2013) .................................................................................................. 23, 26

*Ortiz v. Fibreboard Corp.* 527 U.S. 815 (1999) ........................................................... 25

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) .................................................. 23, 27

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ................................... 25

*Scott v. Aetna Servs.*, 210 F.R.D. 261, 267 (D. Conn. 2002) ...................................... 27

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ......................................... 23

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) .............................................. 22

*Thallapaka v. Sheridan Hotel Associates LLC*, 2015 WL 5148867 (S.D.N.Y. Aug. 17, 2015) .................................................................................................. 31

*Tiro v. Pub. H. Investments*, LLC, 11 CIV. 7679 CM, 2013 WL 2254551 (S.D.N.Y. May 22, 2013) .......................................................................... 21

*Torres v. Gristede's Operating Corp.,* 04-CV-3316 PAC, 2010 WL 5507892
  (S.D.N.Y. Decl. 21, 2010) aff'd, 519 Fed. Appx. 1 (2d Cir. 2013)............................................ 14

*Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993)........................................ 13

*Vitetta v. Sirius XM Radio Inc.*, 14-CV-2926 (VEC), 2015 WL 13649818
  (S.D.N.Y. Aug. 5, 2015) ............................................................................................................ 21

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) ................................................................ 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ................................... 13

*Willix v. Healthfirst, Inc.,* 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)...................................... 11

*Wright v. Stern,* 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ............................................................. 13

*Yapuna v. Global Horizons Manpower, Inc.*, 254 F.R.D. 407, 416 (E.D. Wa.
  2008) ........................................................................................................................................ 27

*Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018) ................................................ 22

**Other Authorities**

*Newberg on Class Actions et seq.* (4th ed. 2002) ................................................................. 13, 20

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... passim

## PRELIMINARY STATEMENT[1]

The proposed settlement resolves all claims in this Class Action and Collective Action Complaint against Defendants Café Spice {GCT}, Inc. a/k/a Café Spice Inc. a/k/a Café Spice Global Cuisine a/k/a Zaika Flavors of India; Sushil Malhotra; Sameer Malhotra; Payal Malhotra; and Virgilio Felix ("Defendants"), under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"). Following a private mediation session, the Parties reached a settlement of the Plaintiffs' and Class Members' claims against Defendants for $1,600,000.

The Parties respectfully request that the Court: (1) grant preliminary approval of the Settlement as memorialized in the Parties' Settlement Agreement, attached as Exhibit 1 to the Declaration of Robert McCreanor in support of this motion and enter the Preliminary Approval Order, in the form attached as Exhibit E to the Settlement Agreement; (2) provisionally certify the proposed settlement class under Federal Rule of Civil Procedure 23(b)(3) in connection with the settlement process; (3) appoint Worker Justice Center of New York as Class Counsel ("Class Counsel"); (4) grant the Parties' request to include all Class Members (with the exception of those who timely Opt-Out) as Affected Class Members subject to the terms of the Settlement Agreement; (5) schedule the Final Fairness Hearing;  (6) approve the Settlement Forms attached as Exhibits C and D to the Settlement Agreement, the proposed manner of notice and the Parties' request that endorsed settlement checks be deemed filed with the Court in satisfaction of the requirements of 29 U.S.C. § 216(b) and (7) find that the settlement of Plaintiffs Isaac Runciman's and

---

[1] The body of this brief is slightly more than 32 pages in length. Plaintiffs have combined herein their arguments for provisional certification of the settlement class, preliminary approval of the class-wide settlement and *Cheeks* approval of the individual Plaintiffs' claims.  Given this consolidation and the fact that the motion is unopposed, Plaintiffs respectfully request that the Court extend the applicable page limit.

Laos Cardoso's individual FLSA claims against Defendants satisfies the requirements for such agreements in this jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

On November 7, 2018, Plaintiffs Diana Corea, Sindy Pineda, Isaac Runciman, Amparo Chauca, Laos Cardoso, and Juana Cruz (hereafter "the Named Plaintiffs") filed a Collective and Class Action Complaint against Defendants.  Four of the Named Plaintiffs—Diana Corea, Sindy Pineda, Amparo Chauca and Juana Cruz—alleged that, when they were employed as hourly paid manual laborers in Defendants' New Windsor, New York food plant, they suffered various wage and hour violations, including unlawful wage deductions, delayed payment of wages, uncompensated "off the clock" labor, unpaid spread of hours, and noncompliance with NYLL's wage notice and statement requirements.  Plaintiffs Isaac Runciman and Laos Cardoso alleged that they were also unlawfully denied overtime pay for hours worked over forty in work weeks during the time periods that they were employed on a salary basis at Defendants' food plant.

On December 26, 2018, Plaintiffs Diana Corea, Sindy Pineda, Amparo Chauca and Juana Cruz ("Class Representatives") moved for conditional certification of their FLSA claims as a collective action. Dkt 39. On June 6, 2019, the Court granted the Class Representatives' motion for conditional certification. Dkt. 62. Pursuant to the Court's Order, Defendants then identified 689 individuals who they asserted had, at any time during the six years prior to commencement of this action, been employed as hourly paid manual laborers at their New Windsor plant.[2] Plaintiffs' counsel attempted to provide each of these individuals with a notice of pendency of lawsuit and Consent to Sue form.   In total, 58 current and former hourly paid manual laborers at Defendants'

---

[2] Defendants subsequently revised this list, resulting in a total of 687 potential opt-in Plaintiffs and putative Class Members.

New Windsor plant, who were employed at any time during the six years prior to commencement of this action, filed Consent to Sue forms in this case prior to the September 23, 2019 mediation.[3]

## II.   Overview of Investigation and Discovery.

Shortly after commencement of this action, the parties exchanged formal discovery requests. Upon Plaintiffs' motion to compel Defendants to comply with their discovery obligations, Magistrate Judge McCarthy ordered Defendants to produce time and pay records for all potential opt-in Plaintiffs and putative Rule 23 class members for the six-year period prior to commencement of this action.  (Minute Entry for status conference held on July 18, 2018.) Defendants ultimately produced time and pay records for most of the proposed Rule 23 Class Members, as well as limited amounts of information in other relevant categories such as personnel files and internal communications.  Plaintiffs issued a subpoena to Defendants' payroll processor, ADP, and, in response, received additional information pertaining to time and pay records for the proposed Rule 23 Class for a significant portion of the relevant statutory period. Plaintiffs submitted Freedom Of Information Act (FOIA) requests to the United States Department of Agriculture (USDA) and, in response, received information pertaining to regular inspection of Defendants' food plant and related delays and interruptions in production. Additionally, Plaintiffs' counsel personally interviewed and collected evidence from scores of Defendants' current and former employees, including former managerial staff, in and around New Windsor, NY.  Declaration of Robert McCreanor ("McCreanor Decl.") at ¶¶15-19.

---

[3] The Consent to Sue forms filed by Francisco Mendez and Gisella Nino are not included in this total because Francisco Mendez was classified by Defendants as a manager and paid on a salary basis and Gisella Nino did not work for Defendants during the relevant statutory period. Since the mediation, additional Consent to Sue forms have been filed in this action and Plaintiffs' Counsel continues to receive and file with the Court completed Consent to Sue Forms.  Pursuant to the Court's Order, the time period for potential opt-in Plaintiffs to file their Consent to Sue forms will expire on January 1, 2020.

Drawing on these various sources of information, Plaintiffs were better able to assess the class-wide nature of their claims and identify necessary adjustments to the proposed class definition.  McCreanor Decl. at ¶¶ 33-35.  In this regard, Plaintiffs learned that for a period of approximately 8 months within the relevant statutory timeframe, fourteen (14) Class Members, who had been employed by Defendants as truck drivers and based at the New Windsor plant, were paid on a salary basis. These same individuals were paid on an hourly basis for the duration of their employment outside of the 8 month "salary paid" period. Plaintiffs determined that these individuals, several of whom filed Consent to Sue forms in this case and have been in direct communication with Plaintiffs' counsel, suffered the same array of wage and hour violations alleged by Plaintiffs. The proposed Settlement Agreement resolves all wage and hour claims of these individuals and, for the period of time that they were paid on a salary basis, allocates settlements funds according to their owed overtime wages.

Based upon the information gathered prior to commencement of this action and discovery conducted during the 10 months of litigation, Plaintiffs were able to reasonably evaluate the claims in the case and calculate each category of damages under federal and state wage hour law, broken down by Named and Opt-In Plaintiffs', Rule 23 Class Members' and Individual Salary Paid Plaintiffs' claims.

## III.    Settlement Negotiations.

Settlement discussions began in earnest shortly after the entry of Jackson Lewis P.C. as Defendants' counsel in this matter, as Defendants' previous counsel refused to engage meaningfully in such discussions. McCreanor Decl. at ¶¶ 20-22. Following the August 14, 2019 Order granting Defendants' Substitution of Counsel, the parties began resolving outstanding discovery disputes in preparation for mediation. McCreanor Decl. at ¶ 22. On September 18,

2019, Plaintiffs provided to Defendants a settlement demand. McCreanor Decl. at ¶ 23. On September 23, 2019, the parties, including all Named Plaintiffs and two of the individual Defendants, participated in a private mediation session at JAMS beginning at 10:00 a.m. and concluding at approximately 1:00 a.m. the following day. McCreanor Decl. at ¶ 24. At the mediation, the parties reached a settlement in principle. *Id*. Settlement discussions continued after the mediation, and the parties began the process of drafting and negotiating over the formal terms of a settlement agreement. McCreanor Decl. at ¶ 25.  On November 25, 2019, the parties executed the Settlement Agreement attached here as Exhibit 1.

## SUMMARY OF SETTLEMENT TERMS

### I.    Scope of the Settlement.

The Settlement Agreement resolves the claims of the Named Plaintiffs, Individual Salary Paid Plaintiffs, all Opt-In Plaintiffs, and all Class Members who do not "opt out" of the settlement. The lists of FLSA Collective Members and all Rule 23 Class Members, as agreed upon by the parties, are attached to the Settlement Agreement as Exhibits A and B.

### II.   The Settlement Fund.

The Settlement Agreement creates a fund of $1,600,000 ("Settlement Amount") to settle this action (hereinafter the "fund"). Settlement Agreement ("S.A.") at § 3.1. Under the Settlement Agreement, Class Counsel is permitted to seek an award of fees of up to $125,000 plus costs. S.A. § 3.2(A). Also, under the Settlement Agreement, Plaintiffs may seek, and Defendants will not oppose, Service Awards, in addition to their respective Individual Settlement Amounts, for the Class Representatives and designated Opt-In Plaintiffs who participated in individualized discovery. S.A. § 3.3.  From the Settlement Fund, the Individual Salary Paid Plaintiffs' settlement amounts, costs, service payments, and attorneys' fees are to be deducted,

with the net settlement fund to be distributed to the Qualified Class Members, as defined below

in Part III. The fund will be distributed based on an allocation formula, described below in Part

IV. Any unclaimed funds after the payout period will be first used, as necessary, to correct any

Errors and Omissions which occur during administration and then redistributed to Qualified

Class members who have submitted claim forms and cashed their checks. S.A. § 3.4(F).

### III.     Affected and Qualified Class Members.

Under the terms of the Settlement Agreement, "Affected Class Members" are Rule 23

Class Members who do not opt out of the settlement class. S.A. § 1.1.  "Qualified Class

Members" are (a) Rule 23 Class Members who do not opt out, pursuant to Section 2.7 of the

Agreement, and who timely submit completed Claim Forms and (b) all FLSA Opt-in Plaintiffs.

S.A. § 1.31.  "Rule 23 Class Members" include all current and former hourly paid manual

laborers, including truck drivers, and all truck drivers who were paid on a salary basis, who

worked in Defendants' New Windsor plant at any time during the relevant statutory period from

November 7, 2012 through September 23, 2019 and who were agreed upon by the parties and

whose names are listed in Exhibit B attached to the Agreement.  S.A. § 1.33.  FLSA Opt-in

Plaintiffs are all current and former hourly paid manual laborers, including truck drivers, and all

truck drivers who were paid on a salary basis, who worked in or at Defendants' New Windsor

plant at any time from November 7, 2012 through September 23, 2019 and who opted into this

Litigation at any time through January 1, 2020 (the deadline set for filing of Consent to Sue

forms by the Court's Order granting Plaintiffs' motion for conditional certification).  S.A. § 1.21.

FLSA Collective Members are all current and former hourly paid manual laborers, including

truck drivers, and all truck drivers who were paid on a salary basis, who worked in or at

Defendants' New Windsor plant at any time from November 7, 2012 to September 23, 2019 and

who opted into this Litigation as of the September 23, 2019 mediation.  S.A. § 1.20.  A list of

FLSA Collective Members is attached to the Agreement as Exhibit A.

**IV.    Allocation Formula.**

The allocation formula is set forth in S.A. at Section 3.4(B).  The formula implements the

parties' compromise as to the resolution of claims. After Individual Salary Paid Plaintiffs'

settlement amounts, attorneys' fees and costs (including settlement administration costs), and

Service Awards are deducted from the Settlement Amount, the remaining funds (the "Net

Settlement Amount") will be allocated among the Qualified Class Members on a pro rata basis.

Qualified Class Members' Individual Settlement Amounts are based their respective number of

weeks worked during the relevant statutory period, giving additional weight to the weeks worked

by FLSA Opt-in Plaintiffs. S.A. § 3.4(B)(1)(b)(i)-(v).  The Settlement's plan of allocation

includes a workweek multiplier, under which FLSA Collective Members will recover at 1.5

times the workweek rate for weeks worked during the FLSA period.  *Id.*  This FLSA multiplier is

justified because (1) this Court already designated a FLSA Collective Action in this case; (2) the

"similarly situated" standard under the FLSA is arguably more lenient than the Rule 23 class

certification standard; and (3) the FLSA opt-ins have taken an affirmative step to participate in

the FLSA claim in this case, and would more likely pursue their FLSA claims in separate

actions.  The pro rata work week distribution coupled with the FLSA workweek 1.5 times

multiplier constitute a fair, objectively reasonable, and proper attempt to equitably distribute the

proposed settlement. *Cancilla v. Ecolab, Inc.*, 2015 U.S. Dist. LEXIS 106249, at *5 (N.D. Cal.

Aug. 12, 2015) (granting motion for preliminary approval of class-wide wage and hour

settlement including modified *pro rata* distribution formula with a 1.5 multiplier for FLSA opt-in

Plaintiffs).

For the fourteen (14) Qualified Class Members who were truck drivers paid on a salary basis for a period of their employment, their Individual Settlement Amounts will include the actual amount of unpaid overtime, based on their recorded work hours, for the weeks in which they were paid on a salary basis.  S.A. § 3.4(B)(1)(a)

All Qualified Class Members will receive at least $100, thereby assuring that individual Class Members who worked at Defendants' plant for only a short time (less than three weeks) will receive an amount sufficient to justify a release of their FLSA and NYLL claims.  S.A. § 3.4(B)(1)(b)(vi)

The Settlement Agreement requires that all Rule 23 Class Members, except those who have filed a FLSA Consent to Sue form in this action, must submit to the Claims Administrator a completed Claim Form in order to become a Qualified Class Member and receive payment of settlement funds.  Plaintiffs' Counsel recommends this provision because (a) it significantly reduces the costs of claims administration which will be deducted from the Settlement Fund, (b) it reduces the risk of fraud arising from incorrect contact information and (c) provides Rule 23 Class Members the opportunity to verify their correct mailing address and other personal information.  In the experience of Class Counsel, these considerations are particularly important in cases involving low-wage, immigrant workers whose contact information is more likely to change during the course of their employment and litigation. McCreanor Decl. ¶ 9.

The Settlement Agreement provides that, upon Defendants' third and final installment payment, any unclaimed funds will be redistributed to Qualified Class Members according to the formula set forth in the Agreement. S.A. § 3.4(F).  Under this reallocation provision, individual Class Members who received a $100 payment as their previously Individual Settlement Amount will receive a share of the unclaimed funds proportional to their actual number of days or weeks

worked. *Id.* The Settlement Agreement provides that all Rule 23 Class Members shall be permitted to submit a Claim Form (and thereby become a Qualified Class Member) at any time within three years from the date of the Fairness Hearing. S.A. § 3.4(E).

## V.    Releases.

The Settlement Agreement provides that, upon Final Approval of the Settlement, each Affected Class Member will release Defendants as well as their present and former owners, partners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parents, divisions, subsidiaries, affiliates, benefits plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under, or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation (collectively, the "Released Parties"), from any and all claims for any wage and hour violations occurring during the period of time in which he or she was employed by Defendants in position(s) covered by the Rule 23 Class and/or FLSA Collective definitions under federal, state, and/or local law, including but not limited to, any and all claims for unpaid wages, gap time pay, spread of hours, minimum wage, overtime pay, failure to maintain and furnish employees with proper wage records and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under federal, state, and/or local wage and hour laws through the date of preliminary approval of the settlement. S.A. ¶ 3.6(A). The scope of this release is appropriate given the broad of array of FLSA and NYLL claims—including minimum wage, overtime, unlawful deductions, spread of hours, off the clock, wage notice and wage statement violations—asserted in the Complaint.

The Settlement Agreement provides that if the Class Representatives' request for service awards are granted in their entirety by the Court, Class Representatives and Defendants shall

execute a mutual general release in the form annexed to the Settlement Agreement as Exhibit F. S.A. § 3.3(E).

## VI.   Attorneys' Fees and Litigation Costs.

The Settlement Agreement provides that Class Counsel will seek reimbursement from the Fund for attorneys' fees of $125,000, plus actual litigation costs incurred, to compensate them for the time they spent litigating this case, without payment, to date.  S.A. § 3.2.  The FLSA mandates that a Court award attorney's fees to prevailing plaintiffs. 29 U.S.C. § 216(b). Class Counsel is entitled to a fee paid out of settlement amount. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749 (1980). Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Class Counsel will file a motion for approval of attorneys' fees and reimbursement of expenses, along with the motion for final approval of the Settlement. The Settlement Agreement is not contingent on the amount of attorneys' fees and costs ultimately awarded by the Court and any fees not awarded revert to the class. However, the Class Members' position with respect to the fees is a subject of the proposed Class Notice.

## VII.   Service Awards

In addition to their respective, individual, pro rata Settlement Amounts, the Class Representatives and opt-in Plaintiffs who participated in individualized discovery will apply for Service Awards in recognition of the services they rendered on behalf of the Class. S.A. § 3.3.  The Settlement Agreement provides that Class Counsel may seek up to $10,000 for each of the four (4) hourly paid Named Plaintiffs and $2,000 for each of the eleven (11) opt-in Plaintiffs who participated in individualized discovery.  *Id.* Plaintiffs will file a motion for approval of Service Awards along with their motion for final approval of the Settlement. Service Awards are commonly awarded in complex wage and hour litigation. *Matheson v T-Bone Rest. LLC.*, 2011 US

10

Dist LEXIS 143773 at *25 (S.D.N.Y. Dec. 13, 2011) (citing *Willix v. Healthfirst, Inc.,* 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (finding service awards in wage and hour action of $30,000, $15,000, and $7,500 to be reasonable); *Mentor v. Imperial Parking Sys., Inc*., 2010 U.S. Dist. LEXIS 132831, 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) (granting $40,000 and $15,000 service awards in wage and hour action,); *Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) (approving service payments of $25,000 and $10,000 in wage and hour action)) Service Awards are meant to compensate plaintiffs for the benefit they confer on the class, the time and effort they expend to see that the case proceeds successfully, and the risks they bear by putting their names on publicly filed documents and by suing their former employer.

Plaintiffs' Counsel contends that the service awards are appropriate here because these the Named Plaintiffs have served the class very well. They brought this litigation and put their names on a public filing against their former employer. They provided the facts and information necessary to bring this action and obtain conditional certification. The Class Representatives and designated Opt-In Plaintiffs responded to numerous discovery requests from Defendants, requiring the production of documents and sworn interrogatory responses.  All Named Plaintiffs were present at the mediation and all played a critical role in ultimately reaching this settlement. They undertook special risks and conferred an excellent benefit by undertaking this litigation, not just for themselves, but also on behalf of the class. McCreanor Decl. ¶¶ 7, 13, and 24. The Court is called upon not to rule on the proposed Service Awards now, as the perspective of the class has yet to be obtained at a fairness hearing, but simply to find that the appropriateness of service awards has been sufficiently shown so as to issue notice to the class.

**VIII.     Claims Administrator.**

Class Counsel agrees to pay all fees and expenses of the Claims Administrator from the Settlement Fund as litigation expenses, as approved by this Court, and both Parties will have equal access to the Claims Administrator. S.A. § 2.1.  Among other responsibilities, the Claims Administrator will be responsible for generating and mailing the Settlement Forms to Class Members in accordance with this Court's order; receiving, handling, and forwarding to Class Counsel and Defendants' Counsel any Change of Address forms and objections; and providing Class Counsel and Defendants' Counsel with regular reports regarding the status of the mailing of Settlement Forms to Class Members, any objections received, the claims administration process, distribution of the Settlement Checks, and completed Change of Address Forms. *Id.*

## THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED CLASS SETTLEMENT

**I.     THE PRELIMINARY APPROVAL STANDARD**

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.,* 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citations omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg on Class Actions et seq.* (4th ed. 2002) § 13.13. To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 13.10 ("[A] court's preliminary evaluation of the proposed settlement" applies

this test: "if the proposed settlement appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval").

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Visa,* 396 F.3d at 116. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quotations omitted); *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012); *see also Henry v. Little Mint, Inc.*, 2014 WL 2199427, at *6 (S.D.N.Y. May 23, 2014) (citing *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Morris,* 859 F. Supp. 2d at 618 (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)); *In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) (same). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between

experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.,* 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). Ultimately, "[t]he Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Torres v. Gristede's Operating Corp.,* 2010 WL 5507892, at *3 (S.D.N.Y. Decl. 21, 2010) aff'd, 519 Fed. Appx. 1 (2d Cir. 2013); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009) (same). Moreover, "[a] settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'" *Corte v. Fig & Olive Founders LLC*, 2015 WL 12591677, at *2 (S.D.N.Y. June 24, 2015) (quoting *Johnson v. Brennan*, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011). As will be discussed below, the Settlement should be preliminarily approved here because Plaintiffs' counsel are experienced in representation of  low-wage and immigrant workers, Defendants' counsel are experienced management-side attorneys, and both counsel have thoroughly reviewed the relevant hours and pay data for each individual class member, made an assessment of the litigation risks to determine the rational settlement value of this case, and, through the adversarial system and with the facilitation of a neutral third-party mediator, reached an agreement that meets all substantive and procedural requirements for presentation to the class. McCreanor Decl. ¶¶ 13-37.

## II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *2 (E.D.N.Y. Nov. 20, 2012). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and thus in favor of preliminary approval.

### A.  *Grinnell* Factor 1: Complexity, Expense, and Likely Duration of Litigation

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."). This case involves an array of wage and hour claims affecting approximately 700 food plant workers over a period of six years. McCreanor Decl. ¶ 2. The parties have already undertaken considerable time and expense in evaluating the claims and defenses in this case and engaging in vigorous settlement discussions. Further litigation without settlement would necessarily result in additional expense and delay. McCreanor Decl. ¶¶ 13-37. Substantial additional discovery, including depositions of the parties and third parties, would be required to prove liability and damages. Then the parties would file summary judgment motions which would require the Court to *inter alia* determine the parties' significant disputes regarding the applicability of the NYLL spread of hours provision to Plaintiffs' labor and the interpretation of NYLL's wage notice and statement requirements in the context of Defendants' particular pay

practices. Possibly, a complicated trial would be necessary, featuring extensive testimony by Defendants, Plaintiffs, numerous Class Members and third parties. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes. Due to the high stakes involved with a 700-member Class, any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### B. *Grinnell* Factor 2: Reaction of the Class

Although Notice of the Settlement has not been issued to the Class, based upon communication with the Named Plaintiffs and several opt-in Plaintiffs, Class Counsel is confident that the reaction of the Class will be positive. McCreanor Decl. at ¶¶ 28-29. The Class Representatives participated directly in the mediation and were happy with the Settlement in light of the risks of proceeding with the litigation and together with Class Counsel, they believe this Settlement is best for the Class as a whole. *Id.* Although the Court should more fully analyze this factor after notice issues and class members are given the opportunity to opt-out or object, Plaintiffs anticipate that the reaction of the Class will be favorable.

### C. *Grinnell* Factor 3: Stage of the Proceedings

For the third factor, "[t]he pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (citation omitted). *See also, In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive

effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations omitted). Although preparing this case through trial would require additional discovery work for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537.

As detailed above and confirmed by the docket in this case, Plaintiffs' counsel undertook significant efforts to obtain relevant information from Opt-in Plaintiffs, Defendants and third parties.  Plaintiffs' counsel knew what data was needed to value the claims and obtained that information through various devices.   With respect to Plaintiffs' claims for unlawful deductions, delayed payment of wages and wage statement violations, the written discovery conducted was sufficient for Plaintiffs' counsel to fully and precisely evaluate the merits of the claims and defenses. The information gathered by Plaintiffs' counsel, including the review of over 6,000 pages of documents, also helped them to identify what risks the case presented. For Plaintiffs' claims relating to "off the clock" uncompensated labor, Plaintiffs' counsel understood that the ultimate credibility determinations necessary to resolve the matter could only be made at trial. Plaintiffs' Counsel believe the settlement represents a fair and reasonable sum given these risks. Accordingly, this factor also weighs in favor of preliminary approval.

### D.  *Grinnell* Factors 4 and 5: Risks of Establishing Liability and Damages

Although Plaintiffs believe their case is strong, Plaintiffs also believe their recovery is subject to considerable risk as to liability and damages related questions, including the average number of "off the clock" hours of compensable labor performed by Plaintiffs; and the calculation of damages, which would require findings by the Court as to the appropriate application of NYLL's

spread of hours, wage notice and wage statement provisions. Moreover, Defendants believe that they would have had strong chances of prevailing on many of their defenses, which could have resulted in the class obtaining lower or no damages at all after years of litigation. In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). While Plaintiffs believe that their claims are meritorious and class-wide damages provable, Class Counsel are experienced and realistic, and understand that the resolution of these issues is inherently uncertain in terms of outcome and duration. In this case, "[s]ettlement eliminates the risk, expense, and delay inherent in the litigation process." *Beckman,* 293 F.R.D. at 476. The risks of establishing liability and damages factors weigh heavily in favor of preliminary approval.

### E.  *Grinnell* Factor 6: Risks of Maintaining the Class Action Through the Trial

The risk of not certifying the class and failing to maintain class status through trial is also present here. Class certification would be intensively litigated by both parties. In arguing against class certification, Defendant would likely point to the range of functions performed and schedules assigned to Class Members within Defendants' plant and argue that the number and variety of individualized questions, particularly with respect to Class Members' "off the clock" claims, would preclude class certification. Legal authority on certification of similar wage and hour class actions is equivocal. Settlement eliminates the risk, expense, and delay Plaintiffs face. This factor favors preliminary approval.

### F.  *Grinnell* Factor 7: Ability of Defendant to Withstand a Greater Judgment

Defendants maintain that a three-year payment plan is necessary for them to pay the agreed upon settlement amount. S.A. § 3.1(C).  Plaintiffs do not concede the validity of this representation,

but even if the Defendant can withstand a greater judgment or more condensed payout period, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair," *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9), particularly when the other *Grinnell* factors weigh in favor of approval, *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008). Defendants are not required to "empty their coffers before a settlement can be found adequate." *Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836, at *50 (S.D.N.Y. Oct. 16, 2019). This factor does not hinder this Court from granting preliminary approval.

### G. *Grinnell* Factors 8 and 9: Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and In Light of All the Attendant Risks of Litigation

The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. As described in the McCreanor Declaration, WJCNY engaged in a rigorous determination of the fair settlement value of this litigation prior to mediation.[4] Plaintiffs' counsel only recommended this settlement as fair after having performed an exhaustive analysis of litigation risk for each claim and sub-part of each claim, determining thereby the fair settlement value for each Class Member. This settlement passes this rigorous risk discount analysis.

---

[4] Plaintiffs' counsel determines Fair Settlement Value by measuring damages accurately and multiplying the chance of success by such damages, then factoring in the time value of money. Thus, a settlement of a $10,000 claim with a 65% chance of success would have an FSV of $6,500 discounted by the difference in the expected period of payouts with a settlement versus trial and appeals.

## THE SETTLEMENT CLASS SHOULD BE CERTIFIED

## I.   THE CLASS CERTIFICATION STANDARD

For settlement purposes, Plaintiffs seek to certify a class consisting of:

all current and former hourly paid manual laborers, including truck drivers, and all truck drivers who were paid on a salary basis, who worked in Defendants' New Windsor plant at any time during the relevant statutory period from November 7, 2012 through September 23, 2019 and who are listed in Exhibit B to the Settlement Agreement.

S.A. § 1.33 (the "Rule 23 Class"). As further explained below, Plaintiffs contend that the proposed Rule 23 Class satisfies the requirements for certification under Rule 23(a) and (b)(3) and Defendants agree, for settlement purposes only, that a class can be certified. The Court should make a determination that the proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality and adequacy of representation, and at least one of the subsections of Rule 23(b) for purposes of settlement only.[5]  Plaintiffs request, and Defendants do not oppose, for settlement purposes only, that the Court provisionally certify the settlement class, and appoint Plaintiffs' counsel as Class Counsel and Named Plaintiffs Diana Corea, Sindy Pineda, Amparo Chauca and Juana Cruz[6] as class representatives of the Rule 23 Class.

Provisional certification of a class settlement serves several practical purposes, "including avoiding the costs of litigating class status while facilitating a global settlement, ensuring all class members are notified of the terms of the proposed Agreement, and setting the date and time of the final approval hearing." *Garcia Morales v. New Indian Foods LLC*, 2019 WL 2544867, at *2 (S.D.N.Y. June 20, 2019) (granting preliminary approval of class action settlement and provisionally certifying settlement class) (citations omitted); *Vitetta v. Sirius XM*

---

[5] *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)*; Newberg* § 11:27 (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)).

[6] The parties agreed that Named Plaintiff Isaac Runciman is not a Rule 23 Class member and that Laos Cardoso, although a member of the Rule 23 class for a portion of his employment during the relevant statutory period, is not an appropriate Rule 23 Class representative.

*Radio Inc.*, 2015 WL 13649818, at *1 (S.D.N.Y. Aug. 5, 2015) (same); *Dorn v. Eddington Sec., Inc.,* 2011 WL 382200, at *1 (S.D.N.Y. Jan. 21, 2011) (same); *Clark v. Ecolab,* Inc., 2009 WL 6615729, at *4 (S.D.N.Y. Nov. 27, 2009) (same).

Rule 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In the Second Circuit, when evaluating provisional certification of a settlement class, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Tiro v. Pub. H. Investments*, LLC, 2013 WL 2254551, at *3 (S.D.N.Y. May 22, 2013) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). "[W]here a collective action under the FLSA that is based on the same set of facts has been approved there is an inclination to grant class certification of state labor law claims." *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281 F.R.D. 100, 104-05 (E.D.N.Y. 2011); *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together.") (collecting cases).  The same reasons explained on the record at Oral Argument on June 6, 2019, in support of Plaintiffs' Motion for Conditional Class Certification, are applicable here. Dkt. 62. Applying these standards, Plaintiffs contend that each of the elements of class certification—numerosity, commonality, typicality and adequacy—is met in this settlement, and Defendants do not object, for settlement purposes only.

### A.    Numerosity

The fact that there are 687 class members in the proposed New York Settlement Class is more than sufficient to satisfy the numerosity requirement of Rule 23. "In this Circuit, numerosity is presumed when the putative class has at least forty members." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 68–69 (S.D.N.Y. 2018) (citing cases).

### B.    Commonality

To satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The "claims must depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). In contrast to a litigation class, "settlement [] obviates the difficulties inherent in proving the elements of varied claims at trial or in instructing a jury on varied state laws, and 'the difference is key.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 (3d Cir. 2011).

Here, Plaintiffs contend that they and the class share common questions of law and fact, including whether Defendants made improper wage deductions, failed to pay spread of hours, failed to pay minimum wage and overtime wages required for "off the clock" labor, and failed to provide the notice and wage statements required under NYLL.  *Viafara v. MCIZ Corp.,* 2014 U.S. Dist. LEXIS 60695, at *9 (S.D.N.Y. Apr. 30, 2014)  (certifying Rule 23 settlement class based upon finding that plaintiffs and class members shared common questions of law and fact, including "whether defendants failed to pay them overtime wages, off the clock wages, and spread of hours premium in violation of state wage and hour laws, and failed to provide statutory notice as required by New York Labor Law") (citing *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012); *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036, at *3 (S.D.N.Y. May 11, 2010)).  Minor variations among the experiences of Plaintiffs and class members, including the relatively brief period of time during which Defendants' truck driver employees were paid on a fixed salary basis, do not prevent finding sufficiently commonality for the purpose of certifying a class.  *See Bolanos v. Norwegian Cruise Lines Ltd*., 212 F.R.D. 144, 154-55 (S.D.N.Y. 2002) (finding no defect of commonality or typicality where the prospective class members did different jobs that calculated overtime pay using different methods, among other factual variations).

**C.     Typicality**

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Class Representatives contend that their claims satisfy the typicality requirement because their claims for unpaid wages and notice violations all "arise from the same factual and legal circumstances that form the bases of the class members' claims." *Dorn v Eddington Sec., Inc.,* 2011 US Dist LEXIS 11931 (S.D.N.Y. Jan. 20, 2011), at *2 (citations omitted); *Clark*, 2009 WL 6615729, at *5 (same). Here, the Class Representatives and all class members contend that Defendants regularly made unlawful deductions from their wages, regularly delayed payment of their wages, maintained a practice of requiring them to work "off the clock" and failed to pay minimum wage and overtime for these hours of compensable labor; uniformly failed to pay them spread of hours, and regularly failed to provide them the hiring and wage notices required under NYLL. These plant-wide pay practices are sufficient to support a finding of typicality. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (finding commonality and typicality easily satisfied where all class members were subject to the same pay policies).

Differences in the job functions, schedules and manners of payment experienced by Class Representatives and Class Members does not preclude a finding of typicality. *Robidoux*, at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."); *Morris v. Alle Processing Corp.*, 2013 U.S. Dist. LEXIS 64534, at *10 (E.D.N.Y. May 6, 2013) ("Differences among class members as to the number of hours worked, the type of work performed, and the amount of pay received 'concern the amount of damages to which any individual class member might be entitled if and when liability is found, not the amenability of plaintiffs' claims to the class action form.") (quoting *Flores v. Anjost Corp.*, 284 F.R.D. 112, 127 (S.D.N.Y. 2012)).

    **D.**    **Adequacy of Representation.**

The adequacy requirement is satisfied if the representative plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see Dorn*, 2011 WL 382200, at *2 ("Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(4) because Plaintiff's interests are not antagonistic or at odds with class members' interests."). The adequacy requirement exists to ensure that the class representatives will "have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998). No Class Representative has interests that are antagonistic or at odds with Class Members. The Class Representatives have persistently maintained active engagement with this litigation from prior to commencement of the action, through substantial discovery and including vigorous participation in a 15-hour mediation session to resolve the claims on a class-wide basis.  McCreanor Decl. ¶¶ 7, 29.  These efforts demonstrate that they have, and will continue to, adequately represent the class.

### E.      Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently. *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992). This approach protects putative Class Members' due process rights. *See Ortiz v. Fibreboard Corp.* 527 U.S. 815, 846-48 (1999) (explaining that due process requires an opportunity to opt out of a class settlement).

### 1.   <u>Common Questions Predominate</u>

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007); *Dorn*, 2011 WL 382200, at *3 (predominance requirement met when class members assert "common factual allegations and common legal theory")). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the class are unified by common factual allegations – that all class members were subject to the same wage and hour policies, including deductions from their wages for shoes required to be worn in Defendants' plant, delayed payment of wages, required "off the clock" labor for which Class Representatives and class members were not paid, denial of spread of hours pay, and failure to provide the wage notices and statements required under NYLL. These factual allegations are susceptible to common proof and flow into common legal questions, *i.e.*, whether Defendants' deductions from their employees' wages were unlawful,

whether Defendants are liable for damages under FLSA and NYLL for delayed payment of wages, how to calculate damages for failure to pay spread of hours where uncompensated "off the clock" labor occurs, and how to determine liability for wage statement violations where pay stubs do not identify the hours and rates of pay pertaining to delayed wages.  Courts frequently find that "predominance is satisfied where . . . the 'central issue' is whether defendants had a 'uniform policy or practice' of denying wages for all hours worked, overtime wages, and spread of hours compensation."  *Morris*, 2013 U.S. Dist. LEXIS 64534, at *12 (quoting *Garcia*, 281 F.R.D. at 108).

Issues regarding variations in Defendants' pay practices as applied to Class Members, including factual issues regarding off-the-clock work, are minor and tangential as compared to the bulk of the issues, which are applicable to the class as a whole and subject to generalized proof, especially in the context of settlement.  In similar circumstances, courts typically conclude that "[a]lthough determinations as to damages will require individualized inquiries here, such inquiries will not bar certification because common liability issues otherwise predominate." *Morris*, 2013 U.S. Dist. LEXIS 64534, at *13; *see also Moreira v. Sherwood Landscaping Inc.*, 2015 U.S. Dist. LEXIS 43919 (E.D.N.Y. Mar. 31, 2015).

### 2.      A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is an examination of whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 2246 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Rule 23(b)(3)

sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class

action, including whether individual class members wish to bring, or have already brought,

individual actions, and the desirability of concentrating the litigation of the claims in the

particular forum. Fed. R. Civ. P. 23(b)(3).[7]

The Class is composed primarily of low-wage immigrant workers, some of whom

worked for Defendants for brief durations of time and speak little or no English.  For these

individuals, the financial and logistical challenges inherent in vindicating legal rights through

litigation would be exacerbated, and Defendants have already shown themselves willing and able

to devote considerable financial resources to their defense.  Courts have recognized that factors

such as these render class certification particularly appropriate.  *See Robidoux v. Celani*, 987

F.2d 931, 936 (2d Cir. 1993) (noting that potential class members were "economically

disadvantaged, making individual suits difficult to pursue"); *McLaughlin v. Liberty Mut. Ins.

Co.*, 224 F.R.D. 304, 309 (D. Mass. 2004) (noting the lack of financial means and incentive to

pursue claims on an individual basis); *Scott v. Aetna Servs.*, 210 F.R.D. 261, 267 (D. Conn.

2002); *Yapuna v. Global Horizons Manpower, Inc*., 254 F.R.D. 407, 416 (E.D. Wa. 2008) ("It is

undisputed that without this class action, many, if not most, . . . class members would not be in a

position to bring their individual claims.  The amount that could be recovered by a particular

employee would be too small to justify individual actions by individual employees.  A class-

wide litigation of the common questions will reduce litigation costs and promote greater

---

[7] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. "Because the class certification request is made in the context of settlement only, the Court need not address the issue of manageability." *Garcia Morales v. New Indian Foods LLC*, 2019 WL 2544867, at *3 (S.D.N.Y. June 20, 2019); *see also Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").

efficiency."). Because Plaintiffs contend (and Defendant does not oppose for settlement purposes) that the New York Settlement Class satisfies the requirements of Rule 23(a) and 23(b)(3), Plaintiffs' motion to certify the New York Settlement Class, for settlement purposes only, should be granted.

### F.    Class Counsel

Pursuant to Rule 23(g), a "court that certifies a class must appoint class counsel." Here, Plaintiffs' counsel, Worker Justice Center of New York, has significant experience litigating collective and class action cases on behalf of low-wage, immigrant workers. The individual attorneys handling this case have demonstrated their skill handling such matters in the course of this litigation. McCreanor Decl. at ¶¶ 38-48. Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C)(i). The Proposed Class Counsel meet all of these criteria. Information relevant to the evaluation of Worker Justice Center of New York as class counsel is set forth in the declaration of Robert McCreanor. McCreanor Decl. at ¶¶ 38-48. Plaintiffs' attorneys have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims; they have experience prosecuting and settling employment wage and hour collective and class actions; and they are well-qualified to represent the interests of the class. *Id.* Accordingly, Worker Justice Center of New York should be appointed class counsel.

## II.   THE PROPOSED FORMS AND METHOD OF NOTICE TO CLASS MEMBERS ARE FAIR AND ACCURATE.

### A.  The Proposed Class Notice Satisfies Due Process

The Proposed Settlement Notice to be sent to the class (attached to the Settlement Agreement as Exhibit C), fully complies with due process and Federal Rule of Civil Procedure 23.[8] The Notice describes the terms of the settlement, informs the class about the allocation of attorneys' fees and service awards, instructs each Class Member how to timely opt-out or object to the settlement, and provides specific information regarding the date, time, and place of the final approval hearing. Courts have approved class notices even when they provided only general information about a settlement. *See, e.g., In re Michael Milken and Associates Securities Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). The proposed settlement Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B). *See Dorn*, 2011 WL 382200, at *4 ("The Proposed Notice is appropriate because it describes the terms of the settlements, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.").

### B.  The Notice Plan and Award Distribution Process Are Appropriate.

The Settlement Agreement provides that notice to Class Members will be mailed, along with claim forms, by the Claims Administrator to the last known address of each Class Member.

---

[8] Rule 23(c)(2)(B) requires:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The Proposed Notice here satisfies each of these requirements.

S.A. § 2.6. The Claims Administrator will receive the class list within seven (7) days following

the Preliminary Approval Order and will send the notices and claim forms within fourteen (14)

days following the Preliminary Approval Order. *Id*. The Claims Administrator will take all

reasonable steps to obtain the correct address of any Class Member for whom a Notice is

returned as undeliverable and re-send to the most recent addresses available. *Id.* Class Members

will have 60 days from the date of mailing to opt-out or object to the settlement. S.A. §§ 2.7-2.8.

If the settlement is approved, Defendants shall make their first installment payment within thirty-

five (35) days of the Effective Date.  S.A. § 3.1(C).  Full payment of attorneys' fees and costs,

service awards and settlement amounts to Individual Salary Paid Plaintiff shall then be made

from the Settlement Fund. S.A. §§ 3.2(C), 3.3(D), 3.4(A). Within fifteen (15) days of

Defendants' first installment payment, the Claims Administrator will send Qualified Class

Members their first individual settlement payment. S.A. § 3.4(D). The Claims Administrator will

send Qualified Class Members their second and third individual settlement payments within

fifteen (15) days of Defendants' corresponding installment payments. *Id*.  After all allocations,

the Claims Administrator will redistribute to Qualified Class Members who have cashed their

previously mailed checks any amounts remaining in the Settlement Fund.   S.A. § 3.4(F). There

will be no reversion to the Defendants.   *Id*. The entire Net Settlement Fund will be divided

among Qualified Class Members based on the allocation formula set forth in Section 3.4 of the

Settlement Agreement. *Id.* The Settlement Agreement provides that all Rule 23 Class Members

shall be permitted to submit a Claim Form (and thereby become a Qualified Class Member) at

any time within three years from the date of the Fairness Hearing.  S.A. § 3.4(E).

The Court should approve the joint request that opt-in acknowledgments on the back of

Settlement Checks be deemed filed with the Court when each Qualified Class Member signs,

endorses, deposits, cashes or negotiates his or her Settlement Checks. This approach conserves the resources of the Parties and the Court. S.A. § 3.5(A).

**SETTLEMENT AGREEMENT BETWEEN INDIVIDUAL SALARY PAID PLAINTIFFS AND DEFENDANTS SATISFIES *CHEEKS* REQUIREMENTS**

In accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir 2015), Plaintiff Isaac Runciman and Laos Cardoso ("Individual Salary Paid Plaintiffs") respectfully seek approval of the settlement agreements resolving their individual FLSA claims against Defendants.  The Individual Salary Paid Plaintiffs allege that Defendants intentionally misclassified them as overtime "exempt" employees under the FLSA and NYLL and consequently owe them unpaid overtime wages for the hours worked over 40 in weeks when they were paid on a flat salary basis.

The parties have engaged in arms-length settlement discussions.  Plaintiffs Isaac Runciman and Laos Cardoso personally attended and participated in the mediation session.   The Individual Salary Paid Plaintiffs are low-wage workers who are primarily interested in a monetary settlement which would allow them to quickly receive what they believe is owed to them, without the need to engage in protracted litigation and potentially jeopardize their current income and employment due to the need to miss work to prosecute their case. Defendants dispute all of Plaintiffs' claims but feel that the associated costs of continuing to litigate this case weigh heavily in favor of settlement. Defendants are settling without an admission of liability. The parties' Settlement Agreement also lacks certain objectionable provisions related to confidentiality, non-disparagement, or a full release of claims unrelated to NYLL/FLSA, which the Southern District has found to be fatal in other proposed settlements. *See Amhaz v. Booking.com (USA) Inc.*, 2019 U.S. Dist. LEXIS 188519, at *7 (S.D.N.Y. Oct. 29, 2019) (citing *Thallapaka v. Sheridan Hotel Associates LLC*, 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17,

2015) (finding an "overwhelming majority" of courts reject confidentiality provisions in FLSA settlements); *Martinez v. Gulluoglu LLC*, 2016 U.S. Dist. LEXIS 5366, at *1 (S.D.N.Y. Jan. 15, 2016) (finding nondisparagement provisions generally contravene the FLSA's purpose); *Cheeks*, 796 F.3d at 206 (prohibiting releases "that have no relationship whatsoever to wage-and-hour issues").

The proposed Settlement Agreement provides for payment of $55,000 to Plaintiff Isaac Runciman and $45,000 to Plaintiff Laos Cardoso to resolve their claims for the periods of time during which they were paid by Defendants on a salary basis. This amount reflects a portion of the overtime pay and damages Plaintiffs believe are owed to them. From the Plaintiffs' perspective, the prompt payment of the settlement amounts is far preferable to continued litigation and the potential risk of obtaining a judgment against Defendants who dispute almost every aspect of Plaintiffs' claims, including their status as employers under the law.

The attorneys' fees and costs sought by Plaintiffs' counsel in the Settlement Agreement for their work on behalf of the Individual Salary Paid Plaintiffs and the Class Members are more than reasonable.  As a non-profit public interest law firm, WJCNY represents low-income clients without cost to the clients. None of the settlement funds described above as being paid directly to Individual Salary Paid Plaintiffs or Class Members will later be paid to WJCNY. In light of the hours worked by Plaintiffs' counsel and the average hourly rates for attorneys of similar experience practicing in the Southern District of New York, the amount of attorneys' fees, which comprise approximately 8% of the total combined settlement amounts, is below what is customarily approved as fair and reasonable by courts in this District.

**CONCLUSION**

For all of the foregoing reasons, the Parties respectfully request that the Court grant their

Motion for Preliminary Approval of Class Settlement, preliminarily certify the Rule 23

Settlement Class, appoint Plaintiffs' attorneys as class counsel, and enter the Proposed Order.


Date: November 25, 2019


Respectfully Submitted,

 */s/ Robert McCreanor*
Robert McCreanor
Laura Revercomb
John Marsella
Worker Justice Center of New York
9 Main Street
Kingston, NY 12401
(845) 331-6615

*Counsel for Plaintiffs*