IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIANA COREA, SINDY PINEDA, ISAAC RUNCIMAN, AMPARO CHAUCA, LAOS CARDOSO, AND JUANA CRUZ, Individually and on behalf of all others similarly situated as Class Representatives,<br><br>        Plaintiffs,<br><br>        v.<br><br>CAFÉ SPICE {GCT}, INC. A/K/A CAFÉ SPICE INC. A/K/A CAFÉ SPICE GLOBAL CUISINE A/K/A ZAIKA FLAVORS OF INDIA; SUSHIL MALHOTRA; SAMEER MALHOTRA; PAYAL MALHOTRA; AND VIRGILIO FELIX,<br><br>        Defendants. | **Civil Action No. 7:18-cv-10354-KMK**<br><br>**COLLECTIVE AND CLASS ACTION** |

**DECLARATION OF ROBERT MCCREANOR IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MOTION FOR FINAL APPROVAL OF SERVICE AWARDS AND FINAL APPROVAL OF CLASS COUNSEL'S FEES AND COSTS**

I, Robert McCreanor, declare as follows:

      1.     I serve as the legal director of Worker Justice Center of New York (WJCNY), Plaintiffs' counsel herein. WJCNY, a statewide non-profit legal assistance organization represents low-wage and immigrant workers throughout New York State in labor, employment and other related litigation matters.

2. I was lead attorney prosecuting Plaintiffs' claims on behalf of the class in this case.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Factual and Procedural History**

4. On November 7, 2018, Plaintiffs Diana Corea, Sindy Pineda, Isaac Runciman, Amparo Chauca, Laos Cardoso, and Juana Cruz (hereafter "the Named Plaintiffs") filed a Collective and Class Action Complaint against Defendants under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL).

5. On December 26, 2018, Plaintiffs Diana Corea, Sindy Pineda, Amparo Chauca and Juana Cruz ("Class Representatives") moved for conditional certification of their FLSA claims as a collective action. (Dkt. 39)

6. On June 6, 2019, the Court granted the Class Representatives' motion for conditional certification. (Dkt. 62)

7. Pursuant to the Court's Order, Defendants then identified 689 individuals who they asserted had, at any time during the six years prior to commencement of this action, been employed as hourly paid manual laborers at their New Windsor plant.[1] Plaintiffs' counsel attempted to provide each of these individuals with a notice of pendency of lawsuit and Consent to Sue form.

---

[1] Defendants subsequently revised this list, resulting in a total of 687 potential opt-in Plaintiffs and putative Class Members.

8. In total, 75 current and former hourly paid manual laborers at Defendants' New Windsor plant, who were employed at any time during the six years prior to commencement of this action, filed Consent to Sue forms in this case.[2]

9. Shortly after commencement of this action, the parties exchanged formal discovery requests.

10. Upon Plaintiffs' motion to compel Defendants to comply with their discovery obligations, Magistrate Judge McCarthy ordered Defendants to produce time and pay records for all potential opt-in Plaintiffs and putative Rule 23 class members for the six-year period prior to commencement of this action. (Minute Entry for status conference held on July 18, 2018.)

11. Defendants ultimately produced time and pay records for most of the proposed Rule 23 Class Members, as well as limited amounts of information in other relevant categories such as personnel files and internal communications.

12. Plaintiffs issued a subpoena to Defendants' payroll processor, ADP, and, in response, received additional information pertaining to time and pay records for the proposed Rule 23 Class for a significant portion of the relevant statutory period.

13. Plaintiffs submitted Freedom Of Information Act (FOIA) requests to the United States Department of Agriculture (USDA) and, in response, received information pertaining to regular inspection of Defendants' food plant and related delays and interruptions in production.

14. Additionally, Plaintiffs' counsel personally interviewed and collected evidence from scores of Defendants' current and former employees, including former managerial staff, in and around New Windsor, NY.

---

[2] The Consent to Sue forms filed by Francisco Mendez and Gisella Nino are not included in this total because Francisco Mendez was classified by Defendants as a manager and paid on a salary basis and Gisella Nino did not work for Defendants during the relevant statutory period.

15. Drawing on these various sources of information, Plaintiffs were better able to assess the class-wide nature of their claims and identify necessary adjustments to the proposed class definition. In this regard, Plaintiffs learned that for a period of approximately 8 months within the relevant statutory timeframe, fourteen (14) Class Members, who had been employed by Defendants as truck drivers and based at the New Windsor plant, were paid on a salary basis. These same individuals were paid on an hourly basis for the duration of their employment outside of the 8 month "salary paid" period. Plaintiffs determined that these individuals, several of whom filed Consent to Sue forms in this case and have been in direct communication with Plaintiffs' counsel, suffered the same alleged array of wage and hour violations alleged by Plaintiffs. The proposed Settlement Agreement resolves all wage and hour claims of these individuals and, for the period of time that they were paid on a salary basis, allocates settlements funds according to their owed overtime wages.

16. Based upon the information gathered prior to commencement of this action and discovery conducted during the 10 months of litigation, Plaintiffs were able to reasonably evaluate the claims in the case and calculate each category of damages under federal and state wage hour law, broken down by Named and Opt-In Plaintiffs', Rule 23 Class Members' and Individual Salary Paid Plaintiffs' claims.

17. Settlement discussions began in earnest shortly after the entry of Jackson Lewis P.C. as Defendants' counsel in this matter, as Defendants' previous counsel refused to engage meaningfully in such discussions.

18. Following the August 14, 2019 Order granting Defendants' Substitution of Counsel, the parties began resolving outstanding discovery disputes in preparation for mediation.

19. On September 18, 2019, Plaintiffs provided to Defendants a settlement demand.

20. On September 23, 2019, the parties, including all Named Plaintiffs and two of the individual Defendants, participated in a private mediation session at JAMS beginning at 10:00 a.m. and concluding at approximately 1:00 a.m. the following day.

21. At the mediation, the parties reached a settlement in principle. Settlement discussions continued after the mediation, and the parties began the process of drafting and negotiating over the formal terms of a settlement agreement.

22. On November 25, 2019, the parties executed the Settlement Agreement attached here as Exhibit 1.

23. On November 25, 2019, Plaintiffs filed a motion for preliminary approval of the settlement and provisional certification of the settlement class. Dkt. 145.

24. On February 25, 2020, in a bench ruling, the Court granted Plaintiffs' requests for provisional class certification, appointment of class representatives and Class Counsel, approved the proposed Notice of Class Action Settlement ("Notice") and authorized the parties to select a Claims Administrator.

25. Upon the Court's request, the parties agreed to revise the language of the release in the Settlement Agreement. (Dkt. 152) The revised release language was then incorporated into the Notice of Class Action Settlement. A copy of the executed revised Settlement Agreement is attached hereto as Exhibit 2.

26. On March 5, 2020, in a written Order, the Court granted Plaintiffs' request for preliminary approval of the settlement and authorized the Claims Administrator to begin mailing of the Class Notice. Dkt. 153.

27. The period for objecting to the settlement closed on May 26, 2020.

28. The Claims Administrator selected by the parties and approved by the Court is

Settlement Services Inc. ("SSI"). The cost estimate provided to all partied by SSI is attached hereto as Exhibit 3.

29. After the Court granted preliminary approval, Class Counsel provided SSI with copies of the notice and forms approved by the Court. The Notice advised Class Members of their right to opt out of the Settlement, object to the Settlement, speak at the Final Fairness Hearing, or do nothing, and the implications of each such action or inaction. *See,* Notice, Dkt. 146-1 at page 43. The Notice also advised Class Members of applicable deadlines and other events, including the Final Fairness Hearing, and how Class Members could obtain additional information. *Id.*

30. On March 13, 2020, Class Counsel provided SSI with a spreadsheet containing the name, last known address and estimated total award for Class Members ("Class List"). On March 24, 2020, (the "Notice Date"), Notices were printed with the name and address of the Class Member and his or her estimated settlement payment, and were mailed via First Class Mail to Class Members contained in the Class List.

31. Six hundred eighty-seven (687) notices were sent, one hundred ninety (190) notices were returned by the USPS as "undeliverable." SSI performed an advanced address search and, where possible, re-mailed those undeliverable Notices. Of those 190 "undeliverable" notices, SSI found possible new addresses and re-mailed the Notice packet to 116 Class Members. Of those 116 re-mailings, only seventy-four (74) were unsuccessful and again resulted in "undeliverable" Notices. Additionally, nineteen (19) notice packets were re-mailed to corrected addressed at the request of class members.

32. Class counsel has received and continues to receive phone calls from Rule 23 Class Members who recently became aware of the settlement and wish to provide their current

mailing address in order to receive the Notice and Claim Form. Class Counsel is working closely with SSI to make sure that all such individuals promptly receive their Notice and Claim Forms.

33. WJCNY expects to continue seeking Rule 23 Class Members who have not filed Claim Forms through its extensive community outreach work in the area.

34. A total of 129 completed Claims Forms have been received by the Claims Administrator to date. Including all opt-in Plaintiffs, who are not required to file Claim Forms and are automatically Qualified Class Members, a total of 175 individuals have so far formally indicated their desire to receive their respective settlement funds pursuant to the Settlement Agreement.

**The Reaction of the Class Representatives to the Settlement Has Been Positive**

35. The reaction of the class has been overwhelmingly positive, with no class members filing an objection or opting out of the settlement.

36. The calls that Class Counsel have received from Class Members regarding the settlement have been uniformly positive.

**Contributions of Various Plaintiffs**

37. The Named Plaintiffs and those opt-in Plaintiffs who participated in individualized discovery ("designated opt-in Plaintiffs") were integral in this class action and made significant contributions to the prosecution of the litigation.

38. Named Plaintiffs and designated opt-in Plaintiffs have served the class by providing detailed factual information regarding their job duties and hours worked; assisting with the preparation of the complaint; responding to numerous discovery requests; helping to prepare and execute declarations; and assuming the burden associated with assisting with litigation.

39. The Named Plaintiffs and designated opt-in Plaintiffs took time away from their work to attend and participate in many meetings, interviews, document review sessions and the settlement conference. The Named Plaintiffs each attended no fewer than 10 in-person meetings with Class Counsel and participated in numerous telephone interviews over the course of this litigation. Designated opt-in Plaintiffs each attended no fewer than 3 in-person meetings and participated in numerous telephone interviews with Class Counsel during the course of this litigation. Named Plaintiffs and designated opt-in Plaintiffs are uniformly low-wage hourly paid workers who have lost income through their involvement in this case. Many of the Named Plaintiffs and designated opt-in Plaintiffs experienced childcare and other household challenges associated with participation in this case. For each of these individuals and their families, the loss of income and stress resulting from attendance at multiple meetings with Class Counsel is a real hardship.

40. Although trial was unnecessary, the Named Plaintiffs and designated opt-in Plaintiffs were prepared to testify at trial.

41. The Named Plaintiffs and designated opt-in Plaintiffs also assisted Class Counsel to prepare for the mediation that took place on September 23, 2019, and which culminated in this settlement.

42. The Named Plaintiffs and designated opt-in Plaintiffs responded to fact-intensive questions regarding their job duties and hours worked and supplied Class Counsel with information critical to evaluate their claims and the claims of the class.

43. The Named Plaintiffs developed an in-depth understanding of the case and its risks and were able to provide Class Counsel with an informed Class Member's perspective throughout the negotiation process.

44. After the settlement conference, the Named Plaintiffs remained engaged in the settlement process and participated in the review of the settlement agreement.

45. Without the efforts of the Named Plaintiffs and designated opt-in Plaintiffs, this case on behalf of the Class would not have been brought, and this settlement would not have been achieved.

46. Named Plaintiffs and designated opt-in Plaintiffs were identified in public filings and they also expended significant time and energy for the benefit of the Class.

**Continued Litigation Would be Complex, Expensive, Time-Consuming, and Risky**

47. Although Plaintiffs believe their case is strong, Plaintiffs also believe their recovery is subject to considerable risk as to liability and damages related questions, including the average number of "off the clock" hours of compensable labor performed by Plaintiffs; and the calculation of damages, which would require findings by the Court as to the appropriate application of NYLL's spread of hours, wage notice and wage statement provisions.

48. The risk of not certifying the class and failing to maintain class status through trial is also present here. Class certification would be intensively litigated by both parties. In arguing against class certification, Defendant would likely point to the range of functions performed and schedules assigned to Class Members within Defendants' plant and argue that the number and variety of individualized questions, particularly with respect to Class Members' "off the clock" claims, would preclude class certification. Legal authority on certification of similar wage and hour class actions is equivocal.

49. For Qualified Class Members, the settlement funds will provide for one hundred percent recovery of the maximum recoverable amount of damages, as calculated by Plaintiffs'

counsel, in the categories of regular, overtime and spread of hours wages ($185,600.56), as well as liquidated damages for the same unpaid wages ($185,600.56) and for delayed or "retroactive" payment of wages ($36,598.93). Rule 23 Class Members who do not opt-out of the settlement and who submit a claim form, will also receive some portion of the estimated maximum recoverable amount of wage notice and wage statement penalties. (Dkt. 152)

**WJCNY's Qualifications**

50. WJCNY, a statewide non-profit legal assistance organization with offices in Westchester, Ulster and Monroe counties, and its predecessor organizations (Farmworker Legal Services of New York and Workers Rights Law Center of New York) have represented low-wage workers throughout New York State in significant employment litigation matters, including many collective and class action cases, for several decades.

51. WJCNY does not charge its clients for legal assistance but does depend on awards of costs and fees under FLSA, NYLL and other fee shifting statutes to maintain its operations and continue to provide legal assistance to other vulnerable, low-income New Yorkers.

52. This case was handled without prepayment of costs and fees by the Plaintiffs. WJCNY has advanced all the costs of this litigation to date and has covered the overhead for office expenses and payroll of staff handling the litigation.

53. Current cases being handled by WJCNY are summarized on our website http://wjcny.org.

54. WJCNY is currently handling litigation around New York State in which we represent low-wage workers in labor and employment matters across a range of industries, including multiple certified and putative collective and class actions in the Southern and Western Districts of New York. For a summary list of major cases currently under litigation by the WJCNY, see the WJCNY's website.

55. There are currently five full-time practicing attorneys employed at WJCNY, four of whom are primarily focused on labor and employment matters affecting low-wage and

immigrant workers and one of whom is focused on immigration law matters. WJCNY has a robust and diverse community outreach staff who are largely bilingual in English and Spanish and culturally competent in the provision of services to our clients.

56. A summary of the qualifications of WJCNY's attorneys and paralegals is included in the declaration of John Marsella submitted in support of Plaintiffs' motion for approval of service awards, attorneys' fees and costs.

57. I am a 2002 graduate of the Harvard Law School and have been actively practicing law for nearly 18 years. I served by appointment of Robert Morgenthau as an Assistant District Attorney for three years in a trial bureau of the New York County District Attorney's office during which time I prosecuted hundreds of misdemeanor and felony cases including more than 15 of which were tried to verdict before juries and in which I served as lead or sole trial counsel, and others which concluded through bench trials. I was subsequently employed for approximately two years as a litigation associate at the law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP where I primarily represented individual and corporate clients in commercial litigation matters including a major privately initiated federal anti-trust action in which I served as the senior associate on the matter.

58. For more than a decade, I have worked in various non-profit, public interest legal practice settings. I was the founding staff attorney for the employment and housing litigation programs at Catholic Migration Services (CMS), a leading provider of non-profit civil legal services to immigrants and refugees in Brooklyn and Queens, NY. In this capacity, I frequently represented large groups of low-income individuals in both housing and employment law matters. For example, I served as lead counsel for Plaintiffs in *Aguaiza et al. v. Vantage Properties LLC et al*. (105197/08), a case brought in New York State Supreme Court by dozens of low-income, immigrant tenants against their corporate landlords. Similarly, I served as co-counsel for Plaintiffs in *Chamorro et al. v. Ghermezian et al (SDNY 12-cv-8159)*, a Fair Labor Standards Act (FLSA)

and New York Labor Law (NYLL) case in the Southern District of New York which was conditionally certified as a collective action. I subsequently served as Director of Legal Services for CMS during which time I continued to litigate a high volume of housing and employment cases, as well as handle immigration legal matters, while supervising a legal staff comprised of approximately 25 attorneys, paralegals and administrative support persons.

59. I then served as Executive Director and supervising attorney for the Rhode Island Center for Justice, a non-profit public interest law office based in Providence, RI. During this time, I continued to represent large groups of low-income individuals in a range of employment law and civil rights related legal practice areas. For example, I served as lead counsel for Plaintiffs in *Bennett et al. v. Ahern et al.* (PC-15-4214), a class action brought in Rhode Island Superior Court by several low-income, medically vulnerable utility consumers against National Grid and the State of Rhode Island on behalf of more than 5,000 similarly situated households who had experienced illegal shut-off of their gas and electric utility service. In this case, I successfully argued for Plaintiffs at a preliminary injunction hearing, obtaining provisional class-wide injunctive relief. I also served as lead counsel for Plaintiffs in *Reyes et al. v. East Coast Lot & Pavement Corp. et al.* (1:16-cv-00592), a FLSA case brought in the District of Rhode Island and certified as a 216 (b) collective action. I also represented a group of low-wage workers as lead counsel in *Guarcas et al. v. Gourmet Heaven et al.*, a case brought in the District of Rhode Island in which plaintiffs' prevailed on inter alia the issue of successor liability under the FLSA, the first such decision in the First Circuit. *Guarcas v. Gourmet Heaven,* LLC, 2016 US Dist LEXIS 180714 (DRI Nov. 30, 2016, No. 15-056ML)

60. I recently served as Executive Director and supervising attorney of the Hudson Valley Justice Center, a non-profit legal services organization, where my colleague attorney Maureen Hussain, Esq. and I developed an employment litigation docket focused on representation of low-wage workers in wage and hour, illegal discrimination, labor trafficking and other related matters. *See Sandoval v. Tequila Sunrise of Westchester Inc. et al.* (SDNY 7:17-cv-01504) (FLSA and NYLL claims on behalf of restaurant worker); *Alberto et al. v. Plaza Sweets et al.* (SDNY

7:17-cv-10048-NSR) (FLSA, NYLL and ERISA claims on behalf of large-scale commercial bakery workers); *Barragan Contreras et al. v. Rosann Landscape Corp. et al.* (SDNY 7:17-cv-06453-CS) (conditionally certified FLSA collective action, Rule 23 certified NYLL class action on behalf of landscaping workers); *Ramirez et al. v. Abayev et al.* (SDNY 1:17-cv-08688) (FLSA and NYLL claims on behalf of construction workers); *Bisono et al. v. TDL Restoration, Inc.* et al. (SDNY 7:17-cv-9431-JCM) (FLSA and NYLL claims tried to jury verdict in which plaintiffs were awarded maximum damages).

61. As of June 1, 2018, I have served as Legal Director of Worker Justice Center of New York (WJCNY). In this capacity, I have continued to represent low-wage workers in labor and employment matters including the following cases: *Cardenas et. al. v. A.J. Piedimonte Agricultural Development, LLC. et. al.,* (WDNY 1:18-cv-881)(conditionally certified FLSA collective action on behalf of farmworkers); *Diaz Reyes et al. v. W.D. Henry & Sons et al.* (WDNY 1:18-cv-01017) (FLSA, NYLL and Agricultural Worker Protection Act (AWPA) claims on behalf of migrant and seasonal farmworkers); *Morales et al. v. Three Diamond Diner Corp. et al.* (7:19-cv-03460) (FLSA, NYLL and employment discrimination claims brought on behalf of large group of restaurant workers).

**This Motion and Proposed Order and Judgment are Unopposed**

62. Defendants no not oppose Plaintiffs' motions for final approval and approval of costs, fees and service awards.

63. Plaintiffs' proposed Order granting final approval is attached hereto as Exhibit 4.

64. Plaintiffs' proposed Judgment is attached hereto as Exhibit 5.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

June 5, 2020
Kingston, New York.

*/s/ Robert McCreanor*

Robert McCreanor
Worker Justice Center of New York
9 Main Street
Kingston, NY 12419
(845) 331-6615
rmccreanor@wjcny.org