**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

DIANA COREA, SINDY PINEDA, ISAAC RUNCIMAN, AMPARO CHAUCA, LAOS CARDOSO, AND JUANA CRUZ, Individually and on behalf of all others similarly situated as Class Representatives,

       Plaintiffs,

          v.

CAFÉ SPICE {GCT}, INC. A/K/A CAFÉ SPICE INC. A/K/A CAFÉ SPICE GLOBAL CUISINE A/K/A ZAIKA FLAVORS OF INDIA; SUSHIL MALHOTRA; SAMEER MALHOTRA; PAYAL MALHOTRA; AND VIRGILIO FELIX,

       Defendants.

**MEMORANDUM OF LAW**

**Civil Action No. 7:18-cv-10354-KMK**

**COLLECTIVE AND CLASS ACTION**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SERVICE AWARDS TO THE NAMED PLAINTIFFS AND DESIGNATED OPT-INS AND CLASS COUNSEL'S FEES AND COSTS**

Respectfully Submitted,

*by*

John Marsella
Laura Revercomb
Robert McCreanor
Worker Justice Center of New York
9 Main Street
Kingston, NY 12401
(845) 331-6615

*Counsel for Plaintiffs*

1

## Table of Contents

**PRELIMINARY STATEMENT** ................................................................................ **6**

**FACTUAL AND PROCEDURAL BACKGROUND** ................................................. **6**

**ARGUMENT** ............................................................................................................ **8**

    I.    Attorneys' Fees Totaling $125,000 Are Reasonable ....................................... 8

        Plaintiffs' Fee Application is Reasonable Under the Percentage Method ........................... 8

        The Time and Labor Expended By Counsel ................................................. 11

        The Magnitude and Complexities of the Litigation ................................... 12

        The Risk of the Litigation ............................................................................ 13

        The Quality of Representation ...................................................................... 14

        The Requested Fee in Relation to the Settlement ........................................ 15

        Public Policy Considerations ....................................................................... 16

        Plaintiffs' Fee Application is Reasonable Under the Lodestar Method ............................ 17

    II.    Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs ............... 19

    III.    The Proposed Service Payments Are Fair. ..................................................... 20

**CONCLUSION** ...................................................................................................... **24**

## Table of Authorities

### Cases

*Amador v. Morgan Stanley & Co., LLC*, No. 11-cv-4326, Hr'g Tr. 16 (S.D.N.Y. Dec. 19, 2014)

    .................................................................................................................... 17

*Barrentine v. Ark.-Best Freight Sys., Inc.,* 450 U.S. 728, 743 (1981) ......................... 12

Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547 (1984)*............................ 16

*Bredbenner v. Liberty Travel, Inc.*, Civil Action No. 09-905 (MF), 2011 U.S. Dist. LEXIS

    38663, at *57 (D.N.J. Apr. 8, 2011)............................................................... 15

Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC,
    504 F.3d 229 (2d Cir. 2007) ................................................................... 16

Duchene v. Michael Cetta, Inc., 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) ........ 21

Dupler v. Costco Wholesale Corp., 705 F. Supp. 2d 231, 242 (E.D.N.Y. 2010). ......................... 8

Enea v. Bloomberg L.P., No. 12-cv-4656(GBD)(FM) (S.D.N.Y. Oct. 18, 2016) ......................... 9

Garcia v. Pasquareto, 812 N.Y.S.2d 216, 217 (App. Term. 2004) .............................................. 17

Goldberger v. Integrated Res., 209 F.3d 43, 47 (2d Cir. 2000) ................................................... 8

Hart v. RCI Hosp. Holdings, Inc., 166 Lab. Cas. P 36, 381, 2015 5577713, at *15 (S.D.N.Y.
    Sept. 22, 2015) ............................................................................................................ 12

Hart v. RCI Hosp. Holdings, Inc., No. 09 CIV 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept.
    22, 2015) ....................................................................................................................... 9

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ....................................................................... 8

Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ..................................................................... 18

Herman v. RSR Sec. Servs., 172 F.3d 132, 144 (2d Cir. 1999) ................................................. 17

Hernandez v. Merrill Lynch & Co., No. 11 CIV 8472 KBF DCF, 2013 WL 1209563, at *9
    (S.D.N.Y. Mar. 21, 2013) .............................................................................................. 15

Hyun v. Ippudo USA Holdings, No. 14-cv-8706(AJN), 2016 WL 1222347, at *1-2 (S.D.N.Y.
    Mar. 24, 2016) ............................................................................................................... 24

In re Air Cargo Shipping Servs. Antitrust Litig., No. 06-MD-1775 JG VVP, 2015 WL 5918273,
    at *6 (E.D.N.Y. Oct. 9, 2015) ......................................................................................... 23

In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) .. 19

Jackson v. Bloomberg L.P., No. 13-cv-2001(JPO)(GWG) (S.D.N.Y. July 14, 2016) .................. 9

Johnson v. Brennan, 10-cv-4712(CM), 2011 WL 4357376, at *2, 21 (S.D.N.Y. Sept. 16, 2011) 24

*Landmen Partners Inc. v. Blackstone Grp. L.P.* ........................................................... 10

*LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748 (2d Cir. 1998) ........................................ 19

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 430 (2d Cir. 2007) ............... 24

*Matheson v T-Bone Rest. LLC.*, 2011 US Dist LEXIS 143773 at *25 (S.D.N.Y. Dec. 13, 2011) 20

*Matheson v. T-Bone Rest., LLC*, No. 09 CIV. 4214 DAB, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) ..................................................................................................... 20

*Mentor v. Imperial Parking Sys., Inc.*, 2010 U.S. Dist. LEXIS 132831, 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) ............................................................................ 20

*Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) .................................. 18

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.* .................................... 10

*Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) ............................... 22

*Reiseck v. Universal Commc'ns of Miami, Inc., No.* 06 CIV. 0777 LGS JCF, 2014 WL 5374684, at *8 (S.D.N.Y. Sept. 5, 2014) ............................................................... 20

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997) ................................. 21

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 204 (S.D.N.Y. 1997) ................................. 23

*Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999) ................................... 10

*See Anwar v. Fairfield Greenwich Ltd.*, No 09-cv-118, 2012 WL 1981505, at *2 (S.D.N.Y. June 1, 2012) ......................................................................................................... 15

*Siler v. Landry's Seafood House-N.C., Inc.* ............................................................... 16

*Texas State Teachers v. Garland Indep. School Dist.* .................................................... 8

*Thornhill v. CVS Pharmacy, Inc.,* No. 13 Civ. 5507, 2014 WL 1100135 (S.D.N.Y. March 20, 2014) .......................................................................................................... 9

*Voisin v. Bartell Media Corp.*, No. 76 CIV. 3954, 1982 WL 1359, at *7 (S.D.N.Y. Dec. 2, 1982) ................................................................................................................................ 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ................................. 9

*Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ............................ 20

*Willix v. Healthfirst, Inc.*, No. 07 Civ 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ........... 9

*Yuzary v. HSBC Bank USA, N.A.*, 12 Civ 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ....................................................................................................................................... 9

*Zorrilla v. Carlson Rests. Inc.*, No. 14-cv-02740-AT, ECF 514 (S.D.N.Y. Apr. 9, 2018) ............. 9

## PRELIMINARY STATEMENT

Plaintiffs submit this briefing as to the fairness of the Service Awards to the Named Plaintiffs and Designated Opt-In Plaintiffs and Class Counsel's requested fees of $125,000 and reimbursement of costs as set forth in the Parties' Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background are set forth in detail in the Parties' Memorandum in Support of Joint Motion for Final Approval of Class Settlement and for efficiency will not be fully repeated here. Additional facts are laid out in the Declaration of Robert McCreanor submitted in support of the Joint Motion for Final Approval of Class Settlement and Plaintiffs' Motion for Final approval of Service Awards and Final Approval of Class Counsel's Fees and Costs (*"McCreanor Decl."), ECF 155;* the Declaration of John Marsella submitted in support of this motion ("*Marsella Decl."), ECF 158;* and the Declaration of Diana Saguilan submitted in support of this motion (*"Saguilan Decl."), ECF 159.* The following facts are of particular relevance to the instant motion.

On September 23, 2019, the parties to this action participated in a mediation session where they reached an agreement in principle on the monetary value of a settlement that would resolve this action. Soon after, the parties finalized their agreement. *ECF 146-1.* The agreement calls for service awards of $10,000 for the Class Representatives and $2,000 for designated opt-in plaintiffs. It also states that "Class Counsel shall petition the Court for no more than $125,000 as an award of attorneys' fees" and "Class counsel shall also seek reimbursement of actual litigation costs and expenses from the Settlement Fund." *ECF 146-1, Section 3.2 – 3.3.*

On November 25, 2019, Plaintiffs submitted an Unopposed Motion for Preliminary Approval of the Settlement, Provisional Certification of the Settlement Class, Appointment of

Plaintiffs' Counsel as Class Counsel, and Approval of Proposed Notice of Settlement. *ECF 146*. On February 25, 2020, a hearing was held on Plaintiffs' motion. On March 3, 2020, in accordance with this Court's instructions, Plaintiffs submitted a letter to the Court providing additional information and with revised language on Section 3.6(A) of the agreement. *ECF 152*. On March 5, 2020, this Court granted Plaintiffs' motion for preliminary approval and appointed the Worker Justice Center of New York as class counsel pursuant to Fed. R. Civ. P. 23(g). *ECF 153*. The parties' revised Settlement Agreement has since been executed filed with this Court. *ECF 155-2*.

On March 23, 2020, pursuant to this Court's order, the Settlement Administrator issued the Notice of the settlement, which includes the amounts of the Service Awards and Class Counsel's fees, to 687 Rule 23 class members. *McCreanor Decl*. ¶ 31. Under the Settlement Agreement and this Court's order, individuals had sixty calendar days from the initial mailing of the notice to opt-out or submit a written objection to the settlement. Opt-outs or written objections were required to be submitted and postmarked by May 27, 2020. Since the initial mailing, the Settlement Administrator has received 129 claim forms, zero opt-outs, and zero written objections. *McCreanor Decl*. ¶¶ 34 - 35.  Including all opt-in Plaintiffs, who are not required to file Claim Forms and are automatically Qualified Class Members, a total of 175 individuals have formally indicated their desire to receive their respective settlement funds pursuant to the Settlement Agreement.  *McCreanor Decl*. ¶ 34.  Affected Class Members may submit Claim Forms anytime within the three-year period following Final Approval of the Settlement Agreement. Affected Class Members may submit Claim Forms anytime within the three-year period following Final Approval of the Settlement Agreement.

**ARGUMENT**

I.    **Attorneys' Fees Totaling $125,000 Are Reasonable**

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law. Fed. R. Civ. P. 23(h). In *Hensley v. Eckerhart*, the Supreme Court ruled that in fee shifting cases, plaintiffs are entitled to attorneys' fees, "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *see also Texas State Teachers v. Garland Indep. School Dist.*, 489 U.S. 782 (1989). The settlement agreement and recuperation of alleged owed wages and statutory penalties included in the agreement constitutes Plaintiffs prevailing on a significant issue in the litigation and thus entitles them to attorneys' fees. Although Plaintiffs' fee request is unopposed, the Court must nevertheless assess the reasonableness of the fees award when considering whether the settlement is fair. *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 242 (E.D.N.Y. 2010). In the Second Circuit the "percentage method" or the "lodestar method" are appropriate in determining reasonable attorneys' fees. *Goldberger v. Integrated Res.,* 209 F.3d 43, 47 (2d Cir. 2000). As laid out further below, under either method $125,000.00 in attorneys' fees is reasonable.

Plaintiffs' Fee Application is Reasonable Under the Percentage Method

The request for attorneys' fees equals 7.813% of the total settlement agreement and is well below the range of fees typically approved by Courts in this Circuit in similar wage and hour class actions. *See Bondi v. DeFalco*, No. 17-CV-5681 (KMK), 2020 U.S. Dist. LEXIS 84701, at *19 (S.D.N.Y. May 13, 2020) (Karas, K., determining attorneys' fees totaling one-third

of the gross settlement sum "is appropriate as courts in the Second Circuit routinely award attorney's fees in FLSA settlements of one-third of the total recovery").[1]

The percentage of the fund method "directly aligns the interests of the class and its counsel and provides a powerful incentive" to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method").  Here, Class Counsel negotiated a large settlement to Class Members' and Opt-in Plaintiffs' great benefit and did so efficiently with significant resources dedicated to alternative dispute resolution, rather than unnecessary protracted litigation. A percentage-of-the-fund fee award will encourage other plaintiffs' lawyers to do the same.

Class Members' evaluation of the proposed fees for the representation they received is perhaps the most important measure of the reasonableness of the fee. For both named Plaintiffs and absent class members, having a law office or legal services organization willing to cover attorneys' fees and costs is the only way they could afford to litigate their claims. For low wage workers a 7.8% fee represents a significant reduction in fees below the traditional contingency rates. Class Members' approval of the 7.8% rate is evidenced by the fact that none have objected to any of the terms of the settlement. *See, NECA-IBEW Health & Welfare Fund v. Goldman,*

---

[1] *See also, Zorrilla v. Carlson Rests. Inc.*, No. 14-cv-02740-AT, ECF 514 ¶ 9 (S.D.N.Y. Apr. 9, 2018) (approving attorneys' fees of one-third of the settlement fund); *Enea v. Bloomberg L.P.*, No. 12-cv-4656(GBD)(FM), Order Granting Final Approval, ECF 143 at ¶ 10 (S.D.N.Y. Oct. 18, 2016) (approving attorneys' fees equal to 28.36% of the settlement fund); *Jackson v. Bloomberg L.P.*, No. 13-cv-2001(JPO)(GWG), Order Granting Final Approval, ECF 120 at ¶ 10 (S.D.N.Y. July 14, 2016) (approving attorneys' fees equal to 29.5% of the settlement fund); *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713, at *13 (S.D.N.Y. Sept. 22, 2015) (award attorneys' fees of  36.7% of settlement fund in FLSA and NYLL case); *Yuzary v. HSBC Bank USA, N.A.*, 12 Civ. 3693 (PGG), 2013 WL 5492998 at *11 (S.D.N.Y. Oct. 2, 2013) (approving award of 31.7% of the fund); *see also Thornhill v. CVS Pharmacy, Inc.*, No. 13 Civ. 5507, 2014 WL 1100135, at *2-3 (S.D.N.Y. March 20, 2014) ("In this Circuit, courts typically approve attorney's fees that range between 30 and 33 percent" and citing cases); *also see, Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding attorneys' fees equal to 33 1/3% of settlement fund in wage and hour class action and collecting cases finding that such an award is "consistent with the norms of class litigation in this circuit.").

*Sachs & Co.*, No. 10 CIV. 4429-LAP, 2016 WL 3369534, at *1–2 (S.D.N.Y. May 2, 2016)

(awarding requested attorneys' fees and litigation expenses in part because there were no

objections to same); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08-CV-03601-HB-FM,

2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) ("the absence of any objections from any

Class Members to either the application for an award of attorneys' fees or expenses to Lead

Counsel" supports finding the amount of attorneys' fees awarded fair and reasonable); *Voisin v.

Bartell Media Corp.*, No. 76 CIV. 3954, 1982 WL 1359, at *7 (S.D.N.Y. Dec. 2, 1982) ("The

lack of objection to the proposed settlement and application for attorneys' fees by plaintiff's

counsel suggests that the members of the class were satisfied with the settlement and found it fair

and reasonable."). Notice to the class members was provided timely, in numerous languages,

with clear instructions for objecting. The class group, by failing to object, has sent a powerful

message that they are satisfied with the settlement agreement.

Finally, the percentage method provides a valuable public policy consideration by

preserving judicial resources. The percentage method, "relieves the court of the cumbersome,

enervating, and often surrealistic process of evaluating fee petitions." *Savoie v. Merchs. Bank*,

166 F.3d 456, 461 n.4 (2d Cir. 1999) (*quotations omitted*).

Under the percentage method, the *Goldberger Factors* ultimately determine the

reasonableness of a fee, they include: (1) the time and labor expended by counsel; (2) the

magnitude and complexities of the litigation; (3) the risk of the litigation …; (4) the quality of

representation; (5) the requested fee in relation to the settlement; and (6) public policy

considerations. *Goldberger*, 209 F.3d at 50. Each factor weighs in favor of approving Plaintiffs'

request.

The Time and Labor Expended By Counsel

Class Counsel have expended significant time litigating this case. After months of fact gathering, legal research and drafting, the case was initiated on November 7, 2018 and since then Class Counsel has litigated this case while working with scores of workers. *McCreanor Decl. ¶ 14*. Preliminary approval was granted March 5, 2020, nearly a year and a half later. *Dkt. 153*. During this time, Class Counsel have expended a total of approximately 800 attorney hours and 550 paralegal/support staff hours.[2] *Marsella Decl. ¶ 13*. This time includes extensive work speaking to hundreds of multi-lingual Plaintiffs, preparing Plaintiffs' declarations, answering Defendant's discovery demands, seeking and analyzing discovery including through third party subpoenas, filing multiple motions to compel production of documents, moving for collective action certification[3], settlement negotiations including extensive and complex damage calculations, co-drafting the Settlement Agreement, drafting the Notice and related forms, drafting the preliminary approval motion, ensuring the Notice was timely disseminated by the Claims Administrator, assisting the Claims Administrator with locating Class Members, answering questions from Class Members about the settlement after notice was issued, and drafting this motion for final approval. *Marsella Decl. ¶ 13*. Further, Class Counsel anticipate they will expend a minimum of 60-80 additional paralegal/support staff and attorney hours on administering and enforcing the Settlement after final approval over a three year period. *Marsella Decl. ¶ 16*. The labor required to work with a multilingual, low wage industry workforce, exponentially increases the amount of time and effort required to counsel and advise

---

[2] Plaintiffs' hours logs were pulled in preparation of this Motion and omit a number of hours spent preparing this motion and the Joint Motion for Final Approval of Class Settlement and Plaintiffs' Motion for Final approval of Service Awards and Final Approval of Class Counsel's Fees.

[3] Plaintiffs' requested that Defendants consent to conditional certification in order to avoid unnecessary additional costs. Defendants declined to do so.

a Class Group. Counsel has not received any fee for litigating the case nor received reimbursement for their expenditure of $6,357.71 in out of pocket costs to date. *Saguilan Decl. ¶ 6.* Counsel undertook financial risks in agreeing to handle this case. *Marsella Decl. ¶ 18.* Class Counsel is a non-profit legal services organization that provides vital services to the community, the provision of legal services, public education, advocacy, and support for survivors of human trafficking and domestic violence. *Marsella Decl. ¶ 26.* Failure to recover fees and costs in a case such as this would be highly significant because the Worker Justice Center of New York, Inc. is a relatively small organization, consisting of only five labor and employment attorneys. *Marsella Decl. ¶ 27.* This case involved a significant commitment of Class Counsel's available work time requiring staff members to contribute from offices in Kingston, Rochester, and Hawthorne, New York. *Marsella Decl. ¶ 21.* Accordingly, this factor weighs in favor of approval of Class Counsel's requested fees.

The Magnitude and Complexities of the Litigation

With six hundred eighty-seven class members and a class period dating back to November 7, 2012, this case involves questions of fact and law that are incredibly complex and include great depth. "FLSA claims typically involve complex mixed questions of fact and law… These statutory questions must be resolved in light of volumes of legislative history and over [seven] decades of legal interpretation and administrative rulings." *Barrentine v. Ark.-Best Freight Sys., Inc.,* 450 U.S. 728, 743 (1981). "Courts have recognized that FLSA cases can be complex, and that 'hybrid' cases involving FLSA 'opt-in' collective action and NYLL 'opt-out' class action brought under Rule 23 may add complexity." *Hart v. RCI Hosp. Holdings, Inc.*, 166 Lab. Cas. P 36, 381, 2015 5577713, at *15 (S.D.N.Y. Sept. 22, 2015) (*citation omitted*). Adding to this complexity, a NYLL Class brought under Rule 23 and a FLSA opt-in collective action;

this case involved a NYLL Class brought under Rule 23, in addition to the FLSA opt-in collective action.

Further adding to the complexity, this case involved large sets of data in multiple forms, which had to be compiled, aggregated, sorted, and analyzed for Class Counsel to determine the scope of the damages and to allocate the settlement fund. *Marsella Decl. ¶¶ 14, 45*. The damage calculations alone in this action represent the aggregate of 100,000's of data points. *Marsella Decl. ¶ 46.* Discovery included thousands of documents pulled from Defendants and third-party subpoenas to help piece together Defendants' employment practices. *Marsella Decl. ¶ 47.*

This case also included motion practice, including Plaintiffs' motion for conditional certification, and numerous disputes related to the scope and breadth of discovery. At this stage, the docket contains over 150 entries. The legal and factual complexity of this case further supports approval of Class Counsel's attorneys' fees request and this *Goldberger* factor weighs in favor of approving Class Counsel's attorneys' fee award.

The Risk of the Litigation

The second factor involves weighing the riskiness of the litigation. Class Counsel regularly represents workers in low wage industries at no cost to the individual parties. *Marsella Decl. ¶ 23*. Agreeing to represent clients with no direct charge to the client or on a contingency fees basis shifts litigation risks from individuals to Class Counsel. *Espinal v. Victor's Cafe 52nd St., Inc.*, No. 16-CV-8057 (VEC), 2019 U.S. Dist. LEXIS 183642, at *9 (S.D.N.Y. Oct. 23, 2019). Class Counsel, as a non-profit organization, could be precluded from taking on other matters while committing to a case that can be litigated for years. *Marsella Decl. ¶ 21*.

However, Class Counsel take on difficult cases like this one because it believes that they are important issues to workers in low wage industries. *Marsella Decl. ¶ 23*. Class Counsel take

seriously the responsibility to push for rulings favorable for employees. *Marsella Decl.* ¶ 24. A 2014 report by the Community Development Project of the Urban Justice Center identified $125 million in unpaid wage judgments between 2003 and 2013 in New York, any entity litigating wage and hour lawsuits must take on the risk that a judgment may be uncollectable. *See* Empty Judgments: The Wage Collection Crisis in New York 5 (2014), NAT'L CTR. L. ECON. JUST., http://nclej.org/wp-content/uploads/2015/11/Empty-Judgments-The-Wage-Collection-Crisis-in-New-York.pdf. Class Counsel understood that in agreeing to represent Plaintiffs in this litigation, they were exposing themselves to substantial risk. *Marsella Decl.* ¶¶ *18 – 27*. Accordingly, this factor weighs in favor of approval of Class Counsel's requested attorneys' fee award.

The Quality of Representation

"Quality of representation is best measured by results." *McGreevy v. Life Alert Emergency Response, Inc*., 258 F. Supp. 3d 380, 387 (S.D.N.Y. 2017). In this case, the net amount of settlement funds to be distributed to Rule 23 Class Members is estimated to be approximately $1,216,200.07. These funds will provide for one hundred percent recovery of the maximum recoverable amount of damages, as calculated by Plaintiffs' counsel, in the categories of regular, overtime and spread of hours wages ($185,600.56), as well as liquidated damages for the same unpaid wages ($185,600.56) and for delayed or "retroactive" payment of wages ($36,598.93). Rule 23 Class Members who do not opt-out of the settlement and who submit a claim form, will also receive some portion of the estimated maximum recoverable amount of wage notice and wage statement penalties.

Class Counsel believes that this class-wide recovery represents an excellent outcome for Rule 23 Class Members, many of whom would otherwise likely receive no compensation for

their wage and hour violations. Additionally, using the maximum recoverable amounts as calculated by Plaintiffs' counsel, $185,600.56 of the class-wide net settlement funds (less than 25%) cover wages subject to payroll taxation and the remaining $1,030,599.51 (more than 75%) cover a portion of non-wage damages.

The skill and experience of the attorneys assigned as Class Counsel support Class Counsel's request for fees. *See Anwar v. Fairfield Greenwich Ltd.*, No 09-cv-118, 2012 WL 1981505, at *2 (S.D.N.Y. June 1, 2012) (listing class counsel's extensive experience as a factor supporting fee award of one-third of the settlement fund). Class Counsel's significant experience litigating wage and hour cases in New York has led to numerous settlement agreements and judgments in favor of low wage workers across the Second Circuit.[4]

Defendants in this case engaged the law firm of Segal McCambridge Singer & Mahoney, LTD., and later engaged Jackson Lewis P.C. to handle the "active complex class action." *See ECF 109.* The quality of Defendants' counsel is an important factor in evaluating the work of Class Counsel. *Bredbenner v. Liberty Travel, Inc.*, Civil Action No. 09-905 (MF), 2011 U.S. Dist. LEXIS 38663, at *57 (D.N.J. Apr. 8, 2011) (noting "Defendants counsel are also savvy, experienced defense attorneys in wage-and-hour cases (internal citations omitted), and the ability to achieve a favorable result in a case involving such formidable defense counsel is a clear indication of the skill with which class counsel handled these case").

The Requested Fee in Relation to the Settlement

Courts in this district regularly approve percentage of the fund awards that substantially exceed the 7% requested here. Hernandez v. Merrill Lynch & Co., No. 11 CIV. 8472 KBF DCF, 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013) (awarding attorneys' fees of 33% of a $7

---

[4] www.wjcny.org

Million settlement); *Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229 (2d Cir. 2007) (affirming 30% award of a $42.5 million settlement). As a non-profit legal services organization, WJCNY represents low wage and agricultural employees who cannot afford to hire private attorneys. While WJCNY generally seeks full awards and negotiated payment of attorneys' fees consistent with the remedial purposes of the FLSA and other fee shifting statutes, we believe the particular circumstances of this case warrant the proposed distribution of settlement funds.

None of the settlement funds described above as being paid to Plaintiffs will later be paid as fees to WJCNY. WJCNY's status as a non-profit legal services organization does not justify decreasing its attorneys' fee award. Rather, the Supreme Court has made it clear that it is in the interest of the public to award non-profit legal service organizations in the traditional manner, equal to that of private firms, when its counsel is entitled to an award of attorney's fees. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547 (1984). In light of the amount and quality of the work Class Counsel performed and the risk they assumed, and awards in similar cases, a fee award of 7% is in this case is in no way excessive. Accordingly, this factor also weighs in favor of approval of Class Counsel's requested attorneys' fee award.

Public Policy Considerations

Public policy considerations weigh in favor of Class Counsel's requested fees. In rendering awards of attorneys' fees, the Second Circuit and district courts consider "the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *Siler v. Landry's Seafood House-N.C., Inc.*, No. 13-cv-587(RLE), 2014 WL 2945796, at *11 (S.D.N.Y. June 30, 2014). The FLSA and New York State wage and hour laws are remedial statutes designed to protect workers, "the statute was designed to regulate

the conduct of employers for the benefit of employees." *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 144 (2d Cir. 1999). The public policy of the state and federal government is that the interest in enforcing wages and hours laws on behalf of all workers is paramount. *Garcia v. Pasquareto*, 812 N.Y.S.2d 216, 217 (App. Term. 2004).

An award of attorneys' fees helps to ensure that relatively small minimum wage and overtime claims can be heard. Denial of attorneys' fees requests would disincentivize attorneys from taking on wage and hour class action litigation. *Amador v. Morgan Stanley & Co., LLC*, No. 11-cv-4326, (S.D.N.Y. Dec. 19, 2014) ("It's important that lawyers have incentives to bring [wage and hour] cases like this."). Accordingly, this final factor, in addition to factors 1-5, weighs in favor of approval of Class Counsel's requested attorneys' fee award.

Plaintiffs' Fee Application is Reasonable Under the Lodestar Method

Alternatively, Plaintiffs' requested fee is also reasonable under the lodestar method. Where a statute awards a prevailing plaintiff "reasonable attorneys' fees," the Second Circuit has "held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). When utilizing the lodestar method as a "cross check" when applying the percentage of the fund method, Courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50. ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."); *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 306–07 (3d Cir. 2005), *as amended*, (Feb. 25, 2005) (noting that the "lodestar cross-check calculation need entail neither mathematical precision nor bean-counting," and that "[t]he district courts may rely on summaries submitted by

17

the attorneys and need not review actual billing records"). Class counsel submit their entire set of billing records to allow the Court to fully assess their propriety.

The party seeking fees has the burden of establishing that the hours billed are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Where the "work performed by counsel [is] relevant and productive, and not duplicative" counsel is entitled to reimbursement for it. *Id.* Plaintiffs have submitted contemporaneous time records showing the number of hours spent litigating this case. *Marsella Decl. ¶ 28, Ex. 1.* Class counsel has reviewed their records and in the exercise of billing judgment, have not included some items in this petition at all that were duplicative or related to uncompensable administrative tasks.

Class Counsel members McCreanor, Hussain, Marsella, and Rosado Oliveras were recently awarded attorneys' fees following a jury verdict in a FLSA/NYLL lawsuit at the following rates: $350.00 per hour for Robert McCreanor, $225.00 per hour for Maureen Hussain, $225.00 per hour for John Marsella, $125.00 per hour for Nathalia Rosado Oliveras, and $50.00 per hour for Amanda Batista. *See Bisono v. TDL Restoration, Inc.*, 2019 U.S. Dist. LEXIS 167714, at *5 (S.D.N.Y. Sep. 27, 2019). Class Counsel member Laura Revercomb was recently awarded attorneys' fees at a rate of $300.00 per hour in the Southern District. *See Aguirre v. Torino Pizza, Inc.*, No. 18-CV-2004 (KMK), 2019 U.S. Dist. LEXIS 3422, at *10 (S.D.N.Y. Jan. 8, 2019). Gabriel Marcano is new to the Worker Justice Center of New York, but should be entitled to a rate of $125.00 per hour, similar to that of WJCNY paralegal Nathalia Rosado Oliveras. Class counsel has expended over 1300 hours in bringing the case to this stage. The lodestar method shows that the work of lead attorney Robert McCreanor alone supports an attorneys' fee award north of $125,000.00. Beyond the hours included here, Class Counsel will expend numerous additional hours working towards the final resolution of this action – all work

that will be effectively uncompensated. A summary chart is included below, and more fully

explained in the attorney declarations attached to this memorandum of law. *Marsella Decl. ¶¶ 30*

*– 44; McCreanor Decl. ¶¶ 57 – 61.* This chart clearly demonstrates that the lodestar method

supports Plaintiffs' modest fee request of $125,000 in attorneys' fees. *Marsella Decl. ¶ 28.*

| Name | Hourly Rate | Hours | Source | Total Attorneys' Fees |
|---|---|---|---|---|
| Robert McCreanor | $350.00 | 407.58 | Ex. 1, pg. 4 | $142,654.17 |
| John Marsella | $225.00 | 149.93 | Ex. 1, pg. 1 | $33,735.00 |
| Maureen Hussain | $225.00 | 20.4 | Ex. 1, pg. 9 | $4,590.00 |
| Laura Revercomb | $300.00 | 259.28 | Ex. 1, pg. 15 | $77,784.00 |
| Nathalia Rosado Oliveras | $125.00 | 311.2 | Ex. 1, pg. 21 | $38,900.00 |
| Gabriel Marcano | $125.00 | 204.29 | Ex. 1, pg. 22 | $24,201.04 |
| **Total Hours:** | | **1352.68** | **Total Fees:** | **$321,864.21** |

## II.    Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs

Class Counsel requests reimbursement of $6,357.71 in out-of-pocket expenses to be paid

from the Settlement Fund. All costs expended are recoverable under FLSA and NYLL. *See*

*LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748 (2d Cir. 1998). Here, Class Counsel's actual

expenses of $6,357.71 were incidental and necessary to the representation of the Class. *Marsella*

*Decl. ¶ 16.* Such incidental and necessary expenses are wholly reimbursable. *In re Indep. Energy*

*Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be

compensated for reasonable out-of-pocket expenses incurred and customarily charged to their

clients, as long as they were incidental and necessary to the representation of those clients.").

Class Counsel's expenses include meal costs, printing costs, filing fees, service fees,

mailings, translation services, and transportation, *Marsella Dec. ¶¶ 8 - 11, Saguilan Decl. ¶¶ 1 -*

*6, Ex. 1;* which this Court has regularly found to be reimbursable. *See*, *e.g., Reiseck v. Universal*

*Commc'ns of Miami, Inc., No*. 06 CIV. 0777 LGS JCF, 2014 WL 5374684, at *8 (S.D.N.Y. Sept.

5, 2014) ("expenses relating to travel, including transportation and meals, are routinely recoverable"); *Matheson v. T-Bone Rest., LLC*, No. 09 CIV. 4214 DAB, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (awarding reimbursement of class counsel for mediator's fees, expert fees, consultant fees, process server charges, telephone charges, postage, transportation and working meal costs, photocopies, and electronic research because such expenses "are reasonable and were incidental and necessary to the representation of the class"); *Gonsalez v. Marin*, No. 12 CV 1157 (ENV)(RML), 2014 U.S. Dist. LEXIS 77421, at *46 (E.D.N.Y. Apr. 25, 2014) (awarding reimbursement of $500 in translation and interpretation services). A summary chart is included here and more fully explained in the declaration attached to this memorandum of law. *Saguilan Decl. ¶ 5, Ex. 1.*

### III.    The Proposed Service Payments Are Fair.

In addition to their respective, individual, pro rata Settlement Amounts, the Class Representatives and opt-in Plaintiffs who participated in individualized discovery will apply for Service Awards in recognition of the services they rendered on behalf of the Class. The Settlement Agreement provides that Class Counsel may seek up to $10,000 for each of the four (4) hourly paid Named Plaintiffs and $2,000 for each of the eleven (11) opt-in Plaintiffs who participated in individualized discovery.  Service Awards are commonly awarded in complex wage and hour litigation. *Matheson v T-Bone Rest. LLC.*, 2011 US Dist LEXIS 143773 at *25 (S.D.N.Y. Dec. 13, 2011) (*citing Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (finding service awards in wage and hour action of $30,000, $15,000, and $7,500 to be reasonable); *Mentor v. Imperial Parking Sys., Inc.*, 2010 U.S. Dist. LEXIS 132831, 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) (granting $40,000 and $15,000 service awards in wage and hour action,); *Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y.

Sept. 10, 2009) (approving service payments of $25,000 and $10,000 in wage and hour action))
Service Awards are meant to compensate plaintiffs for the benefit they confer on the class, the
time and effort they expend to see that the case proceeds successfully, and the risks they bear by
putting their names on publicly filed documents and by suing their former employer.

Class Counsel contends that the service awards are appropriate here because the Named
Plaintiffs have served the class very well. They brought this litigation and put their names on a
public filing against their former employer. They provided the facts and information necessary to
bring this action and obtain conditional certification. The Class Representatives and designated
Opt-In Plaintiffs responded to numerous discovery requests from Defendants, requiring the
production of documents and sworn interrogatory responses.  All Named Plaintiffs were present
at the mediation and all played a critical role in ultimately reaching this settlement. They
undertook special risks and conferred an excellent benefit by undertaking this litigation, not just
for themselves, but also on behalf of the class. *McCreanor Decl. ¶¶ 37 - 46.*

Named Plaintiffs in class actions are regularly granted service awards as compensation
for the role they play in advancing litigation and the serious risks they bear for the benefit of the
class. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 430 (2d Cir. 2007). In
evaluating the reasonableness of a service award, which is also called a case contribution or an
incentive award, courts consider: personal risk incurred by the plaintiff in becoming and
continuing as a litigant, the time and effort expended by that plaintiff in assisting in the
prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other
burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim,
and the relation between the award and the ultimate recovery. *See Roberts v. Texaco, Inc.*, 979 F.
Supp. 185, 200 (S.D.N.Y. 1997) ("Specifically, in the context of employment cases, class

representatives may find their 'employment credentials or recommendation . . . at risk by reason of [their] having prosecuted the suit.' The class representative 'lends his or her name and efforts to the prosecution of litigation at some personal peril.'").

The Named Plaintiffs and Designated Opt-Ins should receive the proposed award because they put themselves forward on a very public case. *McCreanor Decl. ¶ 46.* Named Plaintiffs have this case publicly associated with their names. *Id.* The Named Plaintiffs and Designated Opt-Ins stepped forward to bring this action knowing the clear risk that publicity concerning this case could harm their future employment prospects. This lawsuit has been reported on in various journals and newspapers and Plaintiffs will be publicly associated with this litigation in a way that future employers could be expected to discover. *Id.* If even one possible future employer declines to hire the Named Plaintiffs because of this case, the service award will likely fail to compensate them for the harm they will suffer. If an entire career is impacted, the financial harms can be expected to exceed the service award by orders of magnitude. The Named Plaintiffs and Designated Opt-Ins also participated in moving this case forward, often at the expense of their own financial gain, motivated to right perceived wrongs suffered by them and other potential class members.  The proposed service payments are a small token of the benefit their courageous acts conferred on the class and will continue in perpetuity to similar employees in the future. These risks to career and future are the very type of "special circumstances justifying an incentive award." *Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015).

In bringing this case, Named Plaintiffs undertook a significant responsibility on behalf of all Defendants' employees by providing detailed factual information regarding their job duties and hours worked, by assisting with the preparation of the complaint, by helping to prepare and execute declarations, by providing counsel with information critical to evaluate their claims and

22

the claims of the class, by providing counsel with an informed Class Member's perspective throughout the settlement negotiation process, by attending and participating in the mediation session, and by remaining engaged in the settlement process and participating in the review and execution of the settlement agreement. *McCreanor Decl. ¶¶ 37 - 39.* The Service Awards requested compensate the Named Plaintiffs and Designated Opt-Ins for their critical role in this litigation.  Indeed, because the FLSA depends more upon private enforcement than public, and because the FLSA depends on people with often small claims to step forward, service awards serve the critically important purpose to encourage regular citizens to fulfill the remedial purposes of the Act. Service awards for class representatives are routinely provided to encourage individuals to undertake the responsibilities and risks of representing the class and recognize the time and effort spent in the case. *See, e.g., Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 430 (2d Cir. 2007) (affirming part of district court's decision that granted service awards of $25,000 each to named plaintiffs recognizing the awards were "related to the individual's personal risk and additional efforts to benefit the lawsuit"); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 204 (S.D.N.Y. 1997) (granting service awards of $85,000 and $50,000 to two named plaintiffs who initiated case and $25,000 to three named plaintiffs who joined lawsuit after its commencement; recognizing that initial named plaintiffs were "driving force" in initiation of litigation and its prosecution to successful conclusion and that they faced personal risk).

Courts also look at the relationship between the service award, the total fund, and the amounts received by individual Class Members. *See*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2015 WL 5918273, at *6 (E.D.N.Y. Oct. 9, 2015). In this instance, the service awards decrease Class Members' payouts by an average of only 4%, 481 of

the class members will lose less than $100.00, and 161 of the class members will lose less than $10.00 as a result of the service awards. *Marsella Decl. ¶ 6.*

At $62,000 total, the amount of Service Awards requested here is 3.875 percent of the total settlement amount and the Awards are well within the range typically awarded by this Court, both in absolute terms and in percentage of the total settlement amount. *See e.g.*, <u>Hyun v. Ippudo USA Holdings</u>, No. 14-cv-8706(AJN), 2016 WL 1222347, at *1-2 (S.D.N.Y. Mar. 24, 2016) (awarding incentive payments totaling 5.0% of $580,000 settlement); *Johnson v. Brennan*, 10-cv-4712(CM), 2011 WL 4357376, at *2, 21 (S.D.N.Y. Sept. 16, 2011) (awarding incentive payments totaling 9.1% of $440,000 FLSA/NYLL settlement).

Here, the Named Plaintiffs and Designated Opt-Ins will receive settlement payments based on the exact same formula as the rest of the Class Members, despite the fact that they performed invaluable work and undertook risks so that the rest of the class might benefit without having to perform any work or undertake any risks. Certain other Class Members will receive substantially *more* than the Named Plaintiffs and Designated Opt-Ins, even when including the amount of the requested service payments. Class Members received notice of the proposed Service Awards and it is telling that no Class Member has objected to the request. The Service Awards should be approved as fair.

<u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that this Court approve the service awards to the named Plaintiffs and designated opt-in Plaintiffs and approve Class Counsel's fees and costs.

Respectfully submitted,

*/s/ John A. Marsella*
John A. Marsella
Counsel for Plaintiffs
Worker Justice Center of New York
1187 Culver Road
Rochester, NY 14609
Tel – 585-325-3050 ext. 2002
Fax – 595-325-7614
jmarsella@wjcny.org